Rebecca NORCROSS, Appellant,

v.

Wallace SNEED, in his official capacity; Jerry A. Franks, in his official capacity; Bernard Stoner, in his official capacity; James French, in his individual and official capacity; William Self, in his individual and official capacity; Terry Wood, in his individual and official capacity; Mickey Wood, in his individual and official capacity; Kelly Hurst, in his individual and official capacity; and Flippin School District of Marion County, Appellees.

No. 83–2574.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1984.

Decided Feb. 12, 1985.

Carol G. Hewett, Fayetteville, Ark., for appellant.

W. Paul Blume, Little Rock, Ark., for appellees.

Before BRIGHT, JOHN R. GIBSON, and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Rebecca Norcross brought this action under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982), claiming that she was refused employment as a librarian in the Flippin, Arkansas schools solely because she is visually handicapped. The district court[1] found against her. On appeal, she argues that the court improperly allocated the burdens of proof, erroneously required a showing of discriminatory intent, and failed to require the defendants to prove by a preponderance of the evidence their nondiscriminatory reasons for rejecting her. In addition, she attacks certain findings of fact and failures to make findings on other issues. We affirm the judgment of the district court, 573 F.Supp. 533.

Norcross has been legally blind since childhood. While the vision in her right eye is correctable to 20/200, she cannot read with her left eye. She received a bachelor's degree in library science in January 1966. After her graduation she worked until 1969 as an assistant librarian at a junior high school in Houston, Texas. From 1969 to 1978, Norcross remained outside of the work force. She sought employment in June 1978 and met with defendant Wallace Sneed, who was superintendent of the Flippin School District. Norcross described to Sneed her education and experience in the field of library science and advised him that she was legally blind. Sneed asked her to read aloud from a letter and she did so. There were no positions available. Sneed told Norcross she could fill out an application form and

1. The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

that she would need to obtain certification in Arkansas. She filled out the application provided.

Norcross and her family moved to Flippin around the start of the school year in 1978. In January 1979, she was certified by the Arkansas Department of Education as a librarian. She contacted Sneed by telephone, informing him of her certification and her interest in a position as librarian. Norcross testified that Sneed told her that if such a position became available, he would hire the most qualified applicant. In July 1979, she submitted another application to Sneed, requesting consideration for any available position. Approximately one month later, Norcross was hired as a teacher's aide to replace a last-minute cancellation. She completed a school year of employment as an aide but was not employed the following year because of a cutback in federal funding.

Near the end of the 1979–80 school year, Norcross learned that the high school librarian was retiring. She called Sneed's office in May 1980 to confirm that her applications were still on file and she visited to reiterate her interest in the library position. Norcross contends that Sneed said that he would refuse to recommend her because of her visual handicap. Sneed testified that he told her that he would not recommend her to the board because of problems she had encountered as a teacher's aide, including supervision, discipline and playground-duty problems. Norcross testified that Sneed told her that he would not submit her application for consideration. Sneed denied having made any such statement. Following this meeting, Norcross contacted the board members to report Sneed's alleged refusal to submit her application. She outlined her qualifications to each board member and advised them that she was legally blind. On June 4, 1980, Sneed asked Norcross to submit a new application because her other application had been temporarily misplaced. By letter dated June 12, 1980, Sneed "reminded" Norcross to submit her application. She delivered an application with letters of reference on June 13, 1980.

After Sneed learned of the librarian's decision to retire, he was advised by the superintendent from a neighboring district that Mrs. Frolkey, a teacher at the Flippin schools, had been an excellent librarian while employed in Eureka Springs, Arkansas. Sneed called Frolkey and requested that she submit an application and she did so on June 7, 1980. She was certified in Arkansas as a teacher and librarian, and had taught fourth grade at Flippin since 1977. Although her application reflected only one year as a librarian at the Eureka Springs high school, she also had six years of experience as a librarian in two Iowa schools similar in size to Flippin. Sneed testified that he was aware of Frolkey's experience, as were most persons in the Flippin educational community. Frolkey testified that she advised Sneed of her library experience during her initial interview when she first applied for the fourth-grade position.

The hiring decision was to be made by the school board. Normally, the superintendent made a recommendation to the board. In this instance, however, Sneed refused to endorse any candidate. Thus, the district court found that the board reached its decision independently. A board meeting was held, at which Norcross made a short presentation concerning her application. After about two hours of deliberation, the board announced that it had unanimously selected Frolkey. The board members admitted that the decision was a choice between Norcross and Frolkey because the other applicants for the position were not minimally qualified.

During the executive session, Norcross's visual handicap was discussed, although no one remembers the exact context. The district court believed that any such reference was made in the context of whether Norcross could perform the job duties. All of the board members testified that Frolkey was chosen because they felt she was the most qualified. They noted that Norcross had served ten years earlier as an "assistant librarian," while on the face of the

application Frolkey had served within the past six years as a "librarian" in a similar sized school. Norcross's total teaching experience included three years as an assistant librarian at a junior high school in Houston and one year as a teacher's aide in Flippin. Frolkey had twenty-two years' teaching experience, five years' experience as head librarian in a high school similar to Flippin, and had taught three years in the Flippin school district with a double certification. The board members regarded Frolkey and Norcross as qualified and indicated that Norcross would have been chosen had Frolkey not been.

Norcross filed this action under 29 U.S.C. § 794 (1982), which provides that "[n]o otherwise qualified handicapped individual * * * shall, solely by reason of his handicap be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." The district court carefully determined the allocation of proof that it would follow in analyzing the evidence and found that Norcross had satisfied her burden of establishing a prima facie case: that she was an otherwise qualified handicapped person, had applied for the position of librarian, and was rejected. It concluded that the defendants articulated the hiring of a more qualified applicant as a legitimate non-discriminatory reason. Rejecting the plaintiff's claims of pretext, the court entered judgment for the defendants. It is this allocation of proof that gives rise to the major issues in this appeal.

## I.

■ Norcross argues that the district court improperly allocated the burdens of proof and persuasion. The proper allocation of burdens in handicap-discrimination cases has been discussed by several of the circuits,[2] but we have not yet addressed this issue. *Doe v. New York University*, 666 F.2d 761 (2d Cir.1981), contains the most convincing analysis of employment discrimination suits under section 504. It explains that there are at least two different types of these suits. In one category, the defendant acknowledges relying on the plaintiff's handicap in reaching the employment decision. This situation raises the issue of whether all of the circumstances provide a reasonable basis for concluding that the plaintiff is not qualified. *Id.* at 776.

In the second category, the defendant denies relying on handicap in reaching the employment decision. *Id.* The case before us falls within this category, as several of the district court's findings show. The defendants may have discussed Norcross's handicap in reaching their hiring decision. Nevertheless, they regarded Norcross as qualified and claimed that their decision was reached solely because Frolkey was better qualified. Moreover, the defendants asserted that Norcross would have been chosen had the job not been given to Frolkey. The allocation utilized by the district court[3] is essentially the standard for the second category set forth in *Doe:*

> [T]he plaintiff has the ultimate burden of proving by a fair preponderance of the evidence that the defendant discriminated against him on the basis of an impermissible factor. [H]e may establish a prima facie case by proving that he

---

2. *See Doe v. New York Univ.*, 666 F.2d 761 (2d Cir.1981); *Prewitt v. United States Postal Serv.*, 662 F.2d 292 (5th Cir.1981); *Pushkin v. Regents of the Univ. of Colo.*, 658 F.2d 1372 (10th Cir. 1981); *New York State Ass'n for Retarded Children v. Carey*, 612 F.2d 644 (2d Cir.1979).

3. First, plaintiff must show that she is an "otherwise qualified handicapped" individual, that she applied for the position as librarian, and that she was rejected. If plaintiff satisfies this requirement, defendant must articulate legitimate, non-discriminatory reasons for re-

jecting the plaintiff's application for the position. Having satisfied this requirement, the burden shifts to the plaintiff to show that the reasons offered are pretextual and that plaintiff was rejected solely because of her handicap. Plaintiff retains the ultimate burden of persuasion on the case as a whole to prove that she is an "otherwise qualified handicapped individual" and that she was rejected solely because of her handicap.
*Norcross v. Sneed*, 573 F.Supp. 533 at 543 (W.D. Ark.1983).

applied for a position for which he was qualified and was rejected under circumstances indicating discrimination on the basis of an impermissible factor. The burden then shifts to the defendant to rebut the presumption of discrimination by coming forward with evidence that the plaintiff was rejected for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for impermissible discrimination.

*Id.* at 776; *see also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We conclude that the district court properly allocated the burdens of proof and persuasion, closely adhering to the *Doe* standard, and we approve the use of this standard.

### A.

■ Norcross contends that she was improperly required to prove discriminatory intent. The district court did not, however, hold that direct proof of discriminatory intent was an element essential to the plaintiff's case. It required a showing of intent only to the extent that Norcross was obligated to raise an inference of discrimination through proof of a prima facie case and a showing of pretext. In a disparate treatment case in which the defendants deny basing the decision on handicap, this inference is a proper consideration.[4] *See generally* Wegner, *The Antidiscrimination Model Reconsidered: Ensuring Equal Opportunity Without Respect to Handicap Under Section 504 of the Rehabilitation Act of 1973,* 69 Cornell L.Rev. 401, 429–36 (1984); Comment, *Section 504*

*of the Rehabilitation Act: Analyzing Employment Discrimination Claims,* 132 U.Pa.L.Rev. 867, 877–84 (1984). Thus, the court properly required Norcross to prove that she was an otherwise qualified handicapped individual rejected solely because of her handicap.

### B.

The court required the defendants to articulate a legitimate, non-discriminatory reason for rejecting Norcross. She urges that the defendants should bear the burden of persuasion on the issue, proving their defense by a preponderance of the evidence rather than merely articulating it.

■ The district court first found that plaintiff had established a prima facie case. It then shifted the burden to defendant to rebut the presumption of discrimination by coming forward with evidence that the plaintiff was rejected for a legitimate reason. This in essence narrowed the issue to whether Frolkey was hired because she was more qualified or solely because Norcross was handicapped. The district court properly declined to place the burden of persuasion on this issue with the defendants. A different designation would have impermissibly shifted the burden to the defendants on the ultimate issue—whether handicap was the sole reason for the decision.[5]

Norcross relies on *Prewitt v. United States Postal Service,* 662 F.2d 292 (5th Cir.1981), and *Pushkin v. Regents of the University of Colorado,* 658 F.2d 1372 (10th Cir.1981). While *Pushkin* states that the employer must prove that rejection was for reasons other than handicap, the case does not persuade us to adopt the Norcross

---

**4.** Discriminatory intent may not be an element essential to the plaintiff's case when the defendant acknowledges basing the employment decision on handicap, *see Pushkin,* 658 F.2d at 1386, or when a neutral practice is challenged as imposing a disparate impact on handicapped individuals, *see Alexander v. Choate,* —— U.S. ——, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985).

**5.** In this context, it is significant that the section 504 plaintiff must show that handicap was the *sole* reason for the decision, while the Title VII plaintiff pursuing a disparate treatment claim need only show that a protected classification was *a factor* influencing the decision. *See Bibbs v. Block,* 749 F.2d 508, 511–12 (8th Cir.1984); *Satz v. ITT Fin. Corp.,* 619 F.2d 738, 746 (8th Cir.1980).

argument.[6] Moreover, the primary issue in *Pushkin* was whether the plaintiff was otherwise qualified, a question not disputed in the instant case. *Prewitt* involved the use of physical criteria that resulted in the plaintiff's exclusion, and no such criteria are present in this case. In addition, *Prewitt's* reasoning seems to depend on an interpretation of *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), that has not been adopted in this circuit. *See Kirby v. Colony Furniture Co.,* 613 F.2d 696, 703 n. 5 (8th Cir.1980) (considering whether defendant bears the burden of persuasion on business justification in Title VII disparate impact cases).

Norcross also relies on *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Mt. Healthy* announced the burdens for cases involving terminations based on constitutionally protected conduct. It requires the plaintiff to show that the exercise of protected conduct was the "motivating factor" in the employment decision. If the plaintiff satisfies this burden, the defendant must show by a preponderance of the evidence that the same decision would have been reached absent the protected conduct. *Id.* at 287, 97 S.Ct. at 576.

No court has applied this allocation of burdens under section 504, and only one circuit has adopted it under Title VII. The Eleventh Circuit has held that once a plaintiff has proven by direct evidence that the defendant acted with a discriminatory motive, the burden shifts to the defendant to prove by a preponderance of the evidence that the same decision would have been reached absent unlawful discrimination. *Lee v. Russell County Board of Education,* 684 F.2d 769, 774 (11th Cir.1982). Direct evidence consists of "direct testimony that the defendant acted with a discriminatory motive." *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1557 (11th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984).

Norcross did not make a case on direct evidence.[7] The record contains no direct testimony that the defendants acted with discriminatory intent or that their actions were based solely on Norcross's handicap. Norcross argues that this standard is satisfied by her testimony that Sneed rejected her exclusively because of her handicap. This contention has two flaws. First, the hiring decision was made by the board, rather than Sneed. There is no direct evidence in the record that the board rejected Norcross solely because of her handicap. Second, Sneed did not "reject" Norcross. He submitted her application to the board for consideration. Similarly, Norcross's allegation of "questionable circumstances surrounding the hiring process," Appellant's Brief at 38, does not constitute direct evidence.[8] *See Clay v. Hyatt Regency Ho-*

---

**6.** The *Pushkin* standard imposes on defendants "the burden of going forward and proving" that rejection was for reasons other than handicap. 658 F.2d at 1387. The opinion does not carefully justify this choice of language and, as it is not supported by any discussion, we cannot accept it as persuasive in view of *Doe.* The court relied on *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). *Davis,* however, sheds no light on the procedural questions under section 504. To the extent that *Pushkin* is inconsistent with our reasoning, we reject its conclusions on this issue. As one commentator has recently observed:

> It may be appropriate to characterize defendant's burden as one of persuasion when defendant seeks to justify its exclusion of plaintiff as necessary in light of plaintiff's handicap-related inabilities * * * * The court's statement in *Pushkin* appears, however, to ex-

> tend beyond these circumstances to characterize defendant's burden as one of persuasion even in those instances in which defendant merely attempts to rebut plaintiff's initial showing of causation. At least in the latter situation, courts should regard the Supreme Court's reasoning in *Burdine,* adopted by the Second Circuit in *Doe,* as controlling.

Wegner, *supra,* at 482 n. 291.

**7.** For similar results in Title VII cases, see *Johnson v. Allyn & Bacon,* 731 F.2d 64, 69 n. 6 (1st Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); *Clay v. Hyatt Regency Hotel,* 724 F.2d 721, 724 (8th Cir.1984); *Zebedeo v. Martin E. Segal Co.,* 582 F.Supp. 1394, 1412 n. 7 (D.Conn.1984).

**8.** While Norcross makes some allegations with respect to the hiring *process,* specifically Sneed's

*tel,* 724 F.2d 721, 724 (8th Cir.1984). At best, these circumstances raise only a prima facie inference of discrimination.[9] It would be improper to require such an inference to be disproved by a preponderance of the evidence. In the handicap context, we deal with shifting burdens not unlike those in Title VII cases. Therefore, the district court did not err in refusing to shift a "preponderance" burden to the defendants.[10]

## II.

Norcross contends that the district court committed a number of errors concerning factual findings. We must examine closely the ultimate finding: that the plaintiff failed to demonstrate that she was refused employment solely because of her handicap. This conclusion may not be overturned unless it is clearly erroneous. *See Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Clay,* 724 F.2d at 724. A review of the record shows that even if the court erred in failing to decide or consider certain factual matters, the ultimate finding is sound.

■ Several of the allegations of error concern findings relating to Sneed. The hiring decision was made by the board. Whatever transgressions Sneed may have committed, he eventually submitted Norcross's application to the board, and the board reached its conclusion independently. The board may have discussed the plaintiff's handicap, but its decision was not based solely on the handicap.

actions, her claim is essentially based on the hiring *decision.* Accordingly, *King v. Trans World Airlines,* 738 F.2d 255 (8th Cir.1984), is not applicable.

9. A comparison to *Mt. Healthy* shows the relative weakness of Norcross's direct evidence. The defendants in that case admitted that their decision was motivated by the act that the plaintiff claimed was constitutionally protected. 429 U.S. at 283 n. 1, 97 S.Ct. at 574 n. 1; *see also Trans World Airlines v. Thurston,* — U.S. – —, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (policy denying transfer privilege on the basis of age is direct evidence of age discrimination).

Using hindsight, a court might conclude that a particular applicant was less qualified than the plaintiff. The inquiry must narrow, however, to the qualifications as the defendants believed them at the time of the hiring decision. *Mantolete v. Bolger,* 96 F.R.D. 179, 182 (D.Ariz.1982). The district court accepted the testimony of the defendants that Norcross, while qualified, was less qualified than Frolkey, and concluded that their decision was not based solely on plaintiff's handicap. The courts need not decide whether, based on all the evidence, a given candidate is the most qualified, only whether an employer preference based on qualifications is a pretext for unlawful discrimination. *See Clay,* 724 F.2d at 724; *cf. De Anda v. St. Joseph Hospital,* 671 F.2d 850, 854 n. 6 (5th Cir. 1982) (whether defendants in Title VII action were mistaken in finding that plaintiff had committed misconduct is irrelevant as long as its belief, though erroneous, was the basis for the termination).[11] Evaluated under these standards, the district court's conclusion is not clearly erroneous.

## III.

■ Finally, Norcross contends that the defendants failed to fulfill their affirmative action obligations. Section 504 does not impose an affirmative action obligation on all recipients of federal funds. *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979); *see Monahan v. Nebraska,* 687 F.2d 1164, 1170 (8th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983). *Davis* goes no further than to

10. We need not decide whether direct evidence of discrimination because of handicap would require application of the *Mt. Healthy* preponderance of the evidence burden, as the issue is not before us. We observe, however, that this court has recently stated that the *Mt. Healthy* standard does not apply in Title VII cases. *Bibbs v. Block,* 749 F.2d at 513.

11. In this context, the ultimate focus is on whether the articulated reasons motivated the defendants. To the extent that the plaintiff can show the reasons are not credible, however, it rebuts the inference that the reasons actually motivated the decision.

suggest that in some situations the failure to modify an existing program might be discriminatory. 442 U.S. at 412, 99 S.Ct. at 2370.

■ Norcross argues that the defendants had an obligation to recruit her for the library position and "thoroughly investigate" her job abilities. It is obvious that her application was carefully considered and reasonably investigated by the board. Norcross was not inhibited from presenting her qualifications to the defendants, as shown by her repeated contacts with the individual board members. Thus, Norcross has failed to demonstrate a failure to abide by any "affirmative action" obligation that may exist under section 504.

We affirm the judgment of the district court.