**Christopher S. OWENS, Plaintiff,**

v.

**Marvin RUNYON, Postmaster General, U.S. Postal Service, Defendants.**

No. 91–0795–CV–W–1.

United States District Court,
W.D. Missouri,
Western Division.

Sept. 16, 1993.

W. Christopher Hodge, Knob Knoster, MO, for plaintiff.

Jerry T. Short, Asst. U.S. Atty., Kansas City, MO, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

WHIPPLE, District Judge.

This action was filed pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a). The plaintiff is a black male who applied for a position with the United States Postal Service. The case was tried by the Court without a jury on June 2, 1993. At the conclusion of the trial, this Court issued a bench decision advising the parties that judgment would be entered in favor of the defendant because plaintiff had failed to prove that he was treated differently than persons who were not disabled, and that defendant's actions were taken for legitimate non-discriminatory reasons which the plaintiff could not prove to be pretextual. The Court hereby enters the following findings of fact and conclusions of law.

*Findings of Fact*

1. While Owens was in the Army, a lantern exploded, severely burning his face, upper extremity, trunk and hands. Soon after the accident, the Army rated Owens as 90 percent disabled and the Veterans Administration ("VA") later determined that he had a service-connected, compensable injury of 30 percent or more. The VA examined Owens

again in March 1985 and determined that his scars were nearly healed and he had a good range of motion in the neck and the upper extremities except for the little finger on his right hand. Owens currently has scar tissue over 22.5 percent of his body.

2. In May 1986, plaintiff pled guilty to a charge of felony burglary in Wyandotte County, Kansas. This was the plaintiff's first criminal offense and he was placed on probation.

3. Owens applied with the United States Postal Service ("USPS") for a position as a city or special delivery carrier in Kansas City. On July 13, 1988, plaintiff received a call-in notice from the Postal Service. The call-in notice informed Owens that his name had been reached on the employment register for the position of city or·special delivery carrier and that he should report for an interview. Plaintiff advised the Postal Service that he was not available for employment until after October 1988.

4. Subsequently, plaintiff was called in regarding a part-time flexible carrier position. On December 13, 1988, plaintiff completed an employment application. On that application, plaintiff indicated that he had been convicted of burglary in May 1986.

5. The Postal Service sent plaintiff for a pre-employment examination on January 23, 1989. The examining physician concluded that "patient may be at increased risk for thermal injury to burned areas if exposed to prolonged extreme temperature changes."

6. The physician rated plaintiff as a low risk, which means "examinee is medically qualified to perform the central functions of the position at the time of examination, but periodic medical follow-up is recommended."

7. On January 23, 1989, the nurse from the Postal Service's Medical Unit noted that plaintiff was "medically unacceptable or questionable." The medical unit nurse also noted that the examining physician needed to view plaintiff's VA records which the Postal Service requested. The medical unit nurse further noted that exposure to cold may increase probability of problems to burn sites on his hands.

8. On January 31, 1989, the nurse informed the personnel office that Owens needed his records reviewed by the examining physician as requested on January 23, 1989.

9. A second memorandum issued by the nurse on January 31, 1989, indicated that plaintiff's records had been reviewed by the examining physician and it was determined that his medical eligibility for the carrier position was still questionable because of possible aggravation of his preexisting condition.

10. On February 7, 1989, the contract physician examined Owens again at the plaintiff's request and recommended that he be issued cold weather protective clothing to prevent injury.

11. On February 2, 1989, plaintiff directed a letter to the Personnel Office wherein he explained the circumstances surrounding his aggravated burglary conviction.

12. On February 3, 1989, the supervisor of Employment and Development, Thomas Naylor, requested approval from the Director of Human Resources, Joel Berman, to pass over Owens' name on the roster based on his recent conviction for burglary. The request was approved on February 9, 1989.

13. Plaintiff was informed that he was tentatively disqualified for employment by the agency on February 9, 1989, because of his personal unsuitability as evidenced by the 1986 felony conviction.

14. Plaintiff was also informed that the Office of Personnel Management ("OPM") would be reviewing the Postal Service's decision because plaintiff was a veteran with a service-connected disability of 30 percent or more.

15. On June 20, 1989, OPM rendered a decision affirming the Postal Service's decision to pass over plaintiff's name on the applicant's roster.

16. On July 26, 1989, the OPM supervisor of Personnel Security Specialist rescinded the OPM decision dated June 20, 1989, and found plaintiff eligible for duty.

17. On September 5, 1989, the plaintiff was informed by Thomas G. Naylor, Manager of Employment and Development of the Kansas City Division, that "after reviewing

your Veterans Administration medical file we decided to send you back to our contract physician for a reevaluation. Please come to the Personnel Office, Room 582C, and pick up the required forms from Ms. Vanessa Tooms to take another physical."

18. In response, Owens informed the agency that he was seeking the advice of legal counsel.

19. On September 26, 1989, the agency again directed plaintiff to submit to another physical examination.

20. Owens refused to be examined. On October 6, 1989, Owens filed a complaint of discrimination with the USPS.

21. In a letter to Owens dated October 17, 1989, the USPS stated:

we need our doctor to determine if the authorized uniform is sufficient to protect you and if fingering mail with a light glove or without a glove is going to affect the scars on your hands. When walking house to house the carrier must finger the mail to have it ready to be placed in the mail box. A carrier cannot finger the mail with warm bulky gloves.

22. During the trial, plaintiff testified that he was subsequently notified in late 1989 that his name had been reached on the employment registry for a position as a clerk with the Postal Service. Owens chose not to pursue the position because he was thinking of going back to community college.

23. Plaintiff also testified during questioning by his attorney that in 1992 he was convicted of another felony for assault and was awaiting sentencing at the time of trial.

24. Two former Postal Service employees, Thomas Naylor and Ken Endsley, and the current Belton, Missouri, Postmaster, Joel S. Berman, testified that they worked in the Human Resources Section of the Main Kansas City Post Office in 1989. They confirmed that it would not be uncommon to require an applicant to get a new physical if more than six months had passed since the medical form was completed.

25. Defendant's witnesses further testified that they requested that Owens go back to the physician because of the passage of time and because the previous medical records did not specifically indicate what type of protective clothing or gloves might be medically warranted.

*Conclusions of Law*

1. With the 1978 amendments to the Rehabilitation Act, individuals can bring a private cause of action for handicap discrimination against the federal government, including the USPS. *See*, 29 U.S.C. § 794(a).[1] *See also, Prewitt v. United States Postal Service*, 662 F.2d 292, 302–03 (5th Cir.1981) (amendments provide a private cause of action).

2. This Court has federal question jurisdiction over the present case. 28 U.S.C. §§ 1331 and 1346(a)(4).

3. The burdens of proof in a Rehabilitation Act case parallel those in a Title VII case. *Norcross v. Sneed*, 755 F.2d 113, 116–17 (8th Cir.1985). Owens has the burden of proving by a preponderance of the evidence a *prima facie* case for handicap discrimination. If he does so, there is a presumption of handicap discrimination. The burden then shifts to the USPS to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its action. If the USPS does so, then Owens must prove by a preponderance of the evidence that the articulated reason is merely a pretext for the discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973).

4. To prove a *prima facie* case of handicap employment discrimination, Owens must prove that he is a "member of a pro-

---

1. Section 794(a) reads:
   No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the partic- ipation in, be denied the benefits of, or be subjected to discrimination under any program or activity ... conducted by ... the United States Postal Service.

tected class, and that an adverse employment action was taken against the plaintiff in circumstances from which an inference of unlawful discrimination arises." *Brousard–Norcross v. Augustana College Ass'n,* 935 F.2d 974, 978 (8th Cir.1991). Thus, Owens will need to show that he is (1) handicapped;[2] (2) otherwise qualified for the job;[3] (3) was treated differently from individuals not of his protected group; and (4) the USPS failed to make a needed or requested reasonable accommodation.[4] *Burdine,* 450 U.S. at 253–55, 101 S.Ct. at 1093–95; *Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Prewitt,* 662 F.2d at 309–10.

■ 5. Initially, the evidence does not support Owens' claim that he has established a *prima facie* case. The evidence shows that it is not uncommon for the Postal Service to require new physical examinations for an applicant whose appointment has been delayed for six months or longer. Applicant may also be asked to update application forms. Plaintiff cannot show that he was treated differently from other persons who have had their appointments initially disqualified or delayed for a lengthy period of time.

6. Plaintiff also failed to prove that the Post Service ever refused to implement a reasonable accommodation. Defendant was ready and willing to accommodate someone or decide that an accommodation constitutes an undue hardship in the absence of information defining what accommodation will be necessary. In this case, Owens had two medical conditions, scarring and high blood pressure, which would need monitoring.

■ 7. If Owens had established a *prima facie* case for handicap discrimination, the burden would shift to the USPS to articulate "some legitimate, nondiscriminatory reason" for requiring an additional physical examination. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95; *Green,* 411 U.S. at 802–03, 93 S.Ct. at 1824. The Postal Service indicated that an examination was necessary to determine if wearing a light glove would be sufficient to prevent injury to the scars on Owens' hands. Further, it is not unreasonable or discriminatory to require an applicant whose appointment has been delayed for over six months to be reexamined before his appointment takes effect. The USPS only carries a burden of production, not persuasion, and because the reason must only be "legally sufficient to justify a judgment of the defendant," the USPS's reason is more than adequate to meet its burden of proof. *See, Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094.

8. The evidence showed that the government's reasons for additional testing were not a pretext for discrimination. The Postal Service officials who directed Owens to pick up the necessary forms and report for another free physical examination did not do so in an effort to prevent plaintiff from being employed by the Postal Service. They did so because they thought that the additional medical information was necessary for the Postal Service to make an informed decision regarding plaintiff's appointment and any ac-

2. The applicable federal regulation defines a "handicapped person" as one who "(1) Has a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such an impairment, or (3) is regarded as having such an impairment." 29 C.F.R. § 1613.702(a);

"Is regarded as having such an impairment" is defined as one who "(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; (3) or has none of the impairments defined in paragraph (b) of this section but is treated by an employer as having such an impairment." 29 C.F.R. § 1613.702(e).

3. A "qualified handicapped person" is one who "with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others...." 29 C.F.R. § 1613.702(f).

4. In some circumstances, a failure to accommodate may indicate unlawful discrimination. *Southeastern Community College v. Davis,* 442 U.S. 397, 412–13, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979); *Simon v. St. Louis County,* 656 F.2d 316, 321 (8th Cir.1981).

"Reasonable accommodation" is defined in 29 C.F.R. § 1613.704.

commodation that might be needed. Caution is not discrimination.

9. The Postal Service specifically informed the plaintiff why another examination was necessary. Plaintiff was aware that the Postal Service would pay for the examination. Plaintiff had no reason to believe that the examination would be unduly long or that the results would be unfavorable. Plaintiff simply decided he did not want to be reexamined.

10. Owens presented no evidence, direct or circumstantial, that the Postal Service engaged in intentional discrimination against plaintiff. *See, Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff regarding the particular employment decision 'remains at all times with the plaintiff' ... and in the final analysis the trier of fact 'must decide which party's explanation of the employer's motivation it believes' "). *See also, Saint Mary's Honor Ctr. v. Hicks,* 509 U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (the burden of persuasion always remains with the plaintiff).

The Postal Service was not motivated by any discriminatory animus when it directed plaintiff to take a physical examination after a prior disqualification was reversed. It is therefore

ORDERED that judgment is entered in favor of the defendant and against the plaintiff.