**Darlene O'CONNOR and Walter O'Connor, by the Minnesota Commissioner of Human Services, his guardian, Plaintiffs,**

v.

**METRO RIDE, INC., a Wisconsin Corporation, and the Metropolitan Council, a Minnesota public corporation, Defendants.**

**No. 98Civ.2340 DDA/RLE.**

United States District Court,
D. Minnesota.

March 10, 2000.

Edward F. Rooney, Minneapolis, MN, for plaintiffs.

Lawrence J. Hayes, Jr., Eagan, MN, for defendants.

## ORDER

ALSOP, Senior District Judge.

### INTRODUCTION

This matter comes before the Court on Defendants' motion for summary judgment on all counts. Plaintiffs agreed at the hearing to the voluntary dismissal of Count Three of their complaint, which alleged a violation of 42 U.S.C. § 1983. On the remaining claims, the Court will rule as follows:

(1) Defendant Metro Ride, Inc.'s (Metro Ride) motion for summary judgment on Counts One (Rehab Act) and Two (ADA) will be granted;

(2) Defendant Metropolitan Council's (the Council) motion for summary judgment on Counts One and Two will be denied;

(3) Both Defendants' motion for summary judgment on Count Four (Negligence by Carrier) will be denied.

### BACKGROUND

Plaintiffs are a married couple, both disabled, who suffered personal injuries on October 31, 1992 following their use of the Metro Mobility transportation program. The Council is the successor public corporation to the two public entities then charged with running Metro Mobility: the former Regional Transit Board (RTB) and the former Metropolitan Transit Commission (MTC). Metro Ride is a private, for-profit company that was under contract with the RTB to provide the Metro Mobility service, administered by the MTC.

Darlene O'Connor suffers from cerebral palsy and uses a wheelchair. Walter O'Connor is mentally retarded, suffers from a seizure disorder and from a deformity and weakness in his left hand. Under assistance from a personal care attendant, the couple has lived on their own since 1990.

Metro Mobility is a specialized transit program for people living in the Twin Cities metropolitan area who cannot use regular route transit because of their disabilities. As required by Minnesota statute, Metro Mobility provides "door-through-door" service, including help in entering and leaving the vehicle and help over exterior steps and through exterior entrances

at departure and destination buildings. *See* Minn.Stat. § 473.386 subd. 6.

In 1992, funding for Metro Mobility came from a state legislative appropriation to the RTB. The RTB also received federal financial assistance that year, a portion of which it distributed to the MTC. However, the state legislature prohibited the RTB—and by extension, its distributee, the MTC—from spending any federal dollars for Metro Mobility. *See* 1991 Minn.Laws Ch. 233, Sec. 3.

In January 1992, the RTB and MTC submitted to the federal Department of Transportation their "ADA Paratransit Plan for the Twin Cities Metropolitan Area," required by federal law. *See* 42 U.S.C. § 12143. The plan stated that Metro Mobility provided door-through-door service in the past and would continue to do so.

On October 31, 1992, the O'Connors used Metro Mobility to transport them from their apartment to the home of Darlene O'Connor's sister, Louise Ittner. Metro Mobility driver Timothy Meyer picked up the O'Connors and drove them to Ittner's house. Meyer used the mechanical lift to help Darlene out of the van.

The O'Connors claim that Meyer then drove away and left the O'Connors at the end of Ittner's driveway. They assert that Meyer left so quickly that no one had a chance to ask for his help getting Darlene inside the house. Meyer has testified that he does not recall the incident.

Without the benefit of the driver's assistance, Walter and Ittner pushed Darlene up the driveway to the house's back door. The two maneuvered Darlene up the two concrete steps to the landing just short of the door, Walter pulling and lifting the back of the wheelchair, Ittner pushing and lifting its front. They then lifted her into the doorway and over the threshold.

Ittner's back doorway opened into a small entryway, behind which was a flight of stairs leading down to the basement. As the two guided Darlene's wheelchair through the doorway, Walter backed up too far and fell down the stairs, pulling Darlene and the chair with him. Both suffered injuries. This action followed.

## STANDARD

Summary judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view all evidence and draw all justifiable inferences in favor of the non-moving party. *Miners v. Cargill Communications, Inc.*, 113 F.3d 820, 823 (8th Cir.), cert. denied, 522 U.S. 981, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997).

## DISCUSSION

### *I. Count One: Rehab Act Violation*

Plaintiffs allege a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the Rehab Act). Section 504 provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

■ To prevail on their claim under § 504, Plaintiffs must demonstrate that: (1) they are qualified individuals with disabilities, (2) they were excluded from participation in or denied the benefits of a program or activity which receives federal funds, and (3) such exclusion or denial of benefits occurred by reason of their disability. *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir.1998).

### A. "Qualified Individuals With Disabilities . . ."

Defendants concede that both Darlene and Walter O'Connor are "qualified individual[s] with a disability" within the meaning of the Rehab Act.

### B. "... Denied the Benefits of a Program or Activity ..."

Defendants admit that one of the benefits of the Metro Mobility program is "door-through-door" service. For purposes of this motion the Court must assume that the Plaintiffs were denied this service; the Defendants have offered no evidence to the contrary. Thus, the Court concludes that Plaintiffs have provided sufficient evidence to survive summary judgment on the issue of whether they were "denied the benefits of a program or activity" within the meaning of the Rehab Act.

### C. "... Receiving Federal Financial Assistance ..."

#### 1. The Council

■ The Council argues that the Rehab Act claim should be dismissed because Metro Mobility did not directly receive any Federal financial assistance. However, the Eighth Circuit has said that the definition of "program or activity receiving Federal financial assistance" is "inclusive." *See Thomlison v. City of Omaha*, 63 F.3d 786, 789 (8th Cir.1995). The statute defines the term to include "all of the operations of a department, agency, special purpose district or other instrumentality of a State or of a local government[,] ... *any part of which* is extended Federal financial assistance." 29 U.S.C. § 794(b)(1)(A) (emphasis added).

In *Thomlison*, the Eighth Circuit applied the Rehab Act to the Fire Division of Omaha's Public Safety Department. *Id.* The department had received federal funds and distributed them to the Police Division but not the Fire Division. *Id.* The Court found it sufficient that one part of the department received federal aid, "[a]lthough the Fire Division did not receive any federal assistance directly....". *Id.*

The facts in *Thomlison* closely parallel the facts in this case. The *Thomlison* defendant expended federal funds on the police division, not the fire division, yet the fire division's actions were subject to Rehab Act scrutiny. Here, the MTC expended federal funds on regular route transit but not the para-transit Metro Mobility program. Like the fire division in *Thomlison*, Metro Mobility's actions are subject to Rehab Act scrutiny, even though it "did not receive any federal assistance directly." *Id.*

#### 2. Metro Ride

■ Metro Ride argues that it, too, is not subject to the Rehab Act provisions because it is a private company. But unlike Title II of the ADA, discussed in Section II.A. below, Rehab Act liability is not conditioned upon an entity's public or private status, but rather its receipt of federal funds. Section 504 specifically provides that a "program or activity" can include a "corporation, partnership, or other private organization ... which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation[,] ... any part of which receives Federal financial assistance." 29 U.S.C. § 794(b)(3)(A)(ii). The Supreme Court has observed that private entities may be liable for money damages for violations of 29 U.S.C. § 504(a). *See Lane v. Pena*, 518 U.S. 187, 198, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *see also Guertin v. Hackerman*, 496 F.Supp. 593, 595–96 (S.D.Tex.1980) ("[P]rivate entities may be sued under [Rehab Act] § 504.").

While Metro Ride's mere private status does not serve as a shield, the Court finds that Metro Ride did not "receive[ ] Federal financial assistance" within the meaning of the Rehab Act. *See Muller v. Hotsy Corp.*, 917 F.Supp. 1389, 1417–18 (N.D.Iowa 1996) (holding that a private corporation does not receive Federal financial assistance unless it "receives a subsidy") (citations omitted). In *Muller*, the court dismissed a Rehab Act claim against an employer whose only nexus to federal funds was a contract it had made with the General Services Administration. *Id.*

Metro Ride's connection to federal funds is even more tenuous than the connection

that was found insufficient in *Muller*. Unlike the *Muller* defendant's direct contract with the federal government, Metro Ride had only a contract with a state governmental entity, the RTB. Further, state law forbade the RTB from paying Metro Ride with any of its federal dollars. Metro Ride cannot be subjected to Rehab Act liability when it received no Federal financial assistance. 29 U.S.C. § 794(b). Therefore, the Court will grant Metro Ride's motion for summary judgment on Count One.[1]

### D. "... By Reason of Their Disabilities ..."

■ Defendants argue that the Plaintiffs have failed to show any evidence that they were discriminated against by reason of their disabilities. In support of their argument, Defendants cite an unpublished Eighth Circuit opinion for the proposition that a Rehab Act plaintiff must show "bad faith or gross misjudgment" to survive a motion for summary judgment. *Todd v. Elkins Sch. Dist. No. 10*, No. 97–3258, 1998 WL 199636, 1998 U.S.App. LEXIS 8083 (8th Cir. Apr. 27, 1998). In fact, the *Todd* court limited the "bad faith or gross misjudgment" standard to cases "in the context of the education of handicapped children," obviously not the context here. *Id.* (citing *Monahan v. Nebraska*, 687 F.2d 1164, 1170–71 (8th Cir.1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983)). Even if this Court were inclined to apply such a heightened standard—and it is not—summary judgment would not be appropriate because a jury could reasonably find that Meyer's alleged failure to assist Plaintiffs through the door of their destination, if proven, constituted a "gross misjudgment."

Defendants next argue that there is no evidence that Meyers failed to provide door-through-door service "by reason of"

the Plaintiffs' disabilities. They point out that there is no evidence that Meyer was abusive or rude to the O'Connors or other Metro Mobility passengers. In support of their argument, Defendants cite a case in which a deaf bus passenger brought a Rehab Act claim against a transit authority following an altercation with one of the transit authority's bus drivers. *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207 (D.C.Cir.1997). The D.C. Circuit noted that the bus driver's "general rudeness" toward the deaf passenger was "thin" evidence that the passenger was discriminated against "by reason of" his deafness. *Id.* at 1214–1215. Nevertheless, the court found there was sufficient evidence of Rehab Act and ADA violations to remand the case for retrial. *Id.* at 1217. *Burkhart* is therefore unhelpful to Defendants' argument, because it confirms that a lack of evidence of rudeness toward disabled passengers—which evidence would permit an inference of discriminatory intent—does not mandate dismissal of Rehab Act claims.

The Court finds that Plaintiffs have offered sufficient evidence of discrimination "by reason of" their disabilities to survive summary judgment. *Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir.1998). In *Gorman*, a wheelchair-bound arrestee suffered injuries while being transported in a police van not equipped with wheelchair restraints. *Id.* at 909–10. The Eighth Circuit reversed the district court's grant of summary judgment for the defendants, holding that Gorman's Rehab Act and ADA claims could go forward: "Gorman's allegations that the defendants denied him the benefit of post-arrest transportation appropriate in light of his disability fall within the framework of both Title II of the ADA and § 504 of the Rehabilitation

1. An additional possible ground exists for dismissal of the Rehab Act claim against Metro Ride. As mentioned above, section 504(b) provides for private entity liability only if the entity is "in the business of providing education, health care, housing, social services, or parks and recreation." 29 U.S.C. § 794(b)(3)(A)(ii). The statute says nothing about public transit. Although an argument could be made that public transit is a "social service," the parties have not addressed the issue and the Court therefore declines to dismiss the claim against Metro Ride on this potential alternative ground.

Act." *Id.* at 913. Similarly here, door-through-door service was a benefit that was "appropriate in light of" the Plaintiffs' disabilities. *Id.* Defendants have offered no other, nondiscriminatory reason why Meyer might have failed to provide door-through-door service. *Cf. Norcross v. Sneed,* 755 F.2d 113, 117 (8th Cir.1985) (requiring the defendant in a disability employment case to articulate a legitimate, non-discriminatory reason why it took the alleged wrongful action).

This case does not present the more common Rehab Act claim in which a disabled employee alleges discriminatory treatment compared to non-disabled co-workers. *See Norcross,* 755 F.2d at 114 (alleged failure to hire because of disability). Nor does this case present a situation where a disabled mass transit user alleges discriminatory treatment compared to non-disabled users. *See United Handicapped Fed'n v. Andre,* 558 F.2d 413, 415 (8th Cir.1977) (alleged failure to make mass transit equipment accessible to disabled persons). No comparison to the treatment of non-disabled users is possible here because Metro Mobility is a service available *only* to the disabled.

The program's purpose is to ensure the safety of disabled persons who "by reason of" their disabilities require special assistance to get around safely. Door-through-door service is one component of that assistance, and denial of it, if proved to a jury, is the precise type of behavior that the Rehab Act was enacted to prevent. The Court therefore finds that a jury might reasonably conclude that Meyer failed to guide Plaintiffs through the door of their destination "by reason of" their disabilities.

## II. Count Two: ADA Violation

Plaintiffs allege violations of Title II of the ADA, 42 U.S.C. § 12132. Title II prohibits disability discrimination in the services of public entities:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be de-

nied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

*Id.* The Court analyzes this claim along similar lines as the Rehab Act claim, save for the Rehab Act's federal funding requirement. See *Gorman,* 152 F.3d at 912 ("[C]ases interpreting either [statute] are applicable and interchangeable.").

Defendants concede that Plaintiffs are qualified individuals with disabilities. They argue that they are entitled to summary judgment because: (1) Plaintiffs have made no showing of "bad faith or gross misjudgment" or other evidence that they were discriminated against "by reason of" their disabilities, and (2) the ADA only requires "origin to destination," not "door-through-door" service. Metro Ride makes the additional argument that, as a private entity, it cannot be liable under Title II.

### A. Liability of Metro Ride as Private Entity

■ Unlike the Rehab Act, the ADA prohibits disability discrimination only in the services of a "public entity." A "public entity" means "any State or local government" or "any department, agency, special purpose district or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Metro Ride argues that it does not fall within this definition and therefore is not subject to liability under Title II of the ADA.

Plaintiffs concede that Metro Ride is not a "public entity." Nonetheless, Plaintiffs cite a number of regulations that state that a private entity providing public transportation services may be "bound by ADA requirements," and may "stand in the shoes of the public entities with which they contract." *See* 49 C.F.R. §§ 37.5(a), 37.21(a), 37.23(a). But while the Court could enjoin a private entity like Metro Ride under these rules, nowhere do they provide that a private entity may be liable

to pay money damages to a private plaintiff under Title II.[2]

Plaintiffs have cited no case, and this Court is not aware of one, finding that a private, for-profit corporation—even one that contracts with a public entity—could be subject to liability under Title II. But one state appellate court has held that such a corporation could not be liable under Title II. *See Doe v. Adkins,* 110 Ohio App.3d 427, 674 N.E.2d 731, 735–36 (1996) (granting summary judgment to corporation that provided contract services to local mental health agency because the corporation was not a public entity within the meaning of Title II of the ADA).

The Court finds that Metro Ride cannot be liable for money damages under Title II of the ADA, even though it may be bound by ADA requirements. Unlike the Rehab Act, the plain language of the ADA prohibits discrimination only by public entities. 42 U.S.C. § 12132. Therefore, the Court will grant Metro Ride's motion for summary judgment on Count Two.

#### B. Bad Faith/Gross Misjudgment

The Court rejects this argument for the reasons described in Part I.D. of this opinion.

#### C. "Origin–to–Destination" Service

■ The Council argues that the ADA requires it to provide only "origin-to-destination" service. *See* 49 C.F.R. § 37.129 ("[C]omplementary paratransit service for ADA-eligible persons shall be origin-to-destination service."). The Court need not decide whether "origin-to-destination" means curb-to-curb, door-to-door, or door-through-door. Because Defendants incorporated door-through-door service in the paratransit plan they proposed to the De-

partment of Transportation, they may be liable under the ADA.

With respect to paratransit services, the statute defines "discrimination" to include "a failure ... to provide paratransit or other special transportation services in accordance with the plan or modified plan the public entity submitted to the Secretary [of Transportation] under this section." 42 U.S.C. § 12143(e)(4). The Council admits that door-through-door service was part of the plan it submitted. A jury could reasonably find that the Council's alleged failure to provide service "in accordance with the plan" constituted unlawful disability discrimination under Title II. The Court will therefore deny the Council's motion for summary judgment on Count Two.

### III. Count Four: Negligence by Carrier

■ Defendants seek dismissal of this state law claim on the basis that, upon dismissal of the federal claims, the Court should not consider the remaining state claim. *See* 28 U.S.C. § 1367(c)(3). Since the Court has denied the Council's motion for summary judgment on the federal claims, dismissal of the state claim against the Council would be inappropriate.

Although the Court has dismissed the federal claims against Metro Ride, the Court may continue to exercise supplemental jurisdiction over the state claim against it, and in the interest of judicial economy the Court will do so. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that a court deciding whether to retain supplemental jurisdiction over state claims should consider "judicial economy, conve-

---

**2.** Relatedly, Plaintiffs also argue, for the first time in a supplemental letter brief the Court requested on this issue, that Metro Ride can be liable under Title III of the ADA. 42 U.S.C. §§ 12181–12189. Metro Ride correctly notes that Plaintiffs' complaint only alleges a violation of Title II, not Title III. Plaintiffs would have to seek leave to amend their complaint to add such a claim. *See* FED.R.CIV.P. 15(a).

In any event, Title III, unlike Title II, does not authorize claims by private individuals for money damages. 42 U.S.C. § 12188; *see Pona v. Cecil Whittaker's, Inc.,* 155 F.3d 1034, 1038–39 (8th Cir.1998) (concurring opinion) ("[I]n a civil action under Title III of the ADA, a private plaintiff can obtain only injunctive relief, not the compensatory and punitive damages that plaintiff seeks.").

nience and fairness to litigants"). Defendants' motion for summary judgment on Count Four will therefore be denied.

\* \* \* \* \* \*

Upon its review of the files, motions and proceedings herein, it is hereby ORDERED that:

1. Count Three is DISMISSED.

2. Defendant Metro Ride, Inc.'s motion for summary judgment on Counts One and Two is GRANTED and those counts are DISMISSED against Metro Ride, Inc.

3. Defendant Metropolitan Council's motion for summary judgment on Counts One and Two is DENIED.

4. Defendants Metro Ride, Inc.'s and Metropolitan Council's motion for summary judgment on Count Four is DENIED.

## COUNTS REMAINING FOR TRIAL

1. The causes of action remaining for trial against Defendant Metropolitan Council are: (a) Count One, Rehab Act; (b) Count Two, Title II of the ADA; and (c) Count Four, Negligence by Carrier.

2. The cause of action remaining for trial against Defendant Metro Ride, Inc. is Count Four, Negligence by Carrier.