**DOE, Appellant,**

v.

**ADKINS et al., Appellees.**

[Cite as *Doe v. Adkins* (1996), 110 Ohio App.3d 427.]

Court of Appeals of Ohio,
Fourth District, Jackson County.

No. 95CA766.

Decided April 18, 1996.

428

430

*Joseph H. Brockwell,* Ohio Legal Rights Service, for appellant.

*Lane, Alton & Horst* and *Richard O. Wuerth,* for appellees Woodland Centers, Inc. and Bernard F. Niehm, Ph.D.

*Richard Roderick,* for appellees G–J–H Community Mental Health Board and Ronald A. Adkins.

---

HARSHA, Judge.

Jane Doe appeals from a judgment of the Jackson County Court of Common Pleas which granted summary judgment for appellees. She raises the following assignment of error for our review:

"The trial court erred by granting summary judgment to defendants Woodland Centers, Inc. and Bernard F. Niehm, Ph.D., when the pleadings, depositions, written admissions, and affidavits filed in the action show that there are genuine issues of material fact to be resolved by the trier of fact."

Appellant is a mentally disabled individual who resides in Jackson County. Since August 1988, appellant had been a client of the Gallia–Jackson–Meigs Board of Alcohol, Drug Addiction and Mental Health Services (the "board") and its contract agency, Woodland Centers, Inc.[1] Appellant received medical/somatic services, psychotherapy, and case management services. On August 17, 1992, Woodland Centers terminated its relationship with appellant because, allegedly, the clinical staff could not establish a therapeutic relationship with her.

After Woodland Centers terminated its relationship with appellant, she was provided mental health services by Dr. Nuggud, a psychiatrist in private practice who was also a contract provider to the board. Dr. Nuggud's contract with the board expired in June or July 1994, but he has continued to provide services to appellant pending the outcome of this litigation. Dr. Nuggud also discontinued his practice in Jackson County as of December 31, 1994, and has since been a part-time staff member at Woodland Centers. Dr. Nuggud is not authorized by Woodland Centers to treat appellant as an agency client.

In November 1993, appellant retained counsel to negotiate reinstatement to services at Woodland Centers. On December 6, 1993, Woodland Centers declined appellant's request to reinstate the terminated services. However, emergency services, the crisis hotline, and the central pharmacy operated by Woodland Centers remain available to her.

After being denied reinstatement, appellant filed a complaint against the board, Ronald Adkins, the executive director of the board, Woodland Centers, and Bernard F. Niehm, executive director of Woodland Centers, to enforce her right to mental health services. In her complaint, appellant alleged violations of

---

1. Appellant first had contact with Woodland Centers in the early 1970s. She became a client/patient from March 1983 until September 1986, and then continued services in August 1988.

Section 504 of the Rehabilitation Act of 1973; Titles II and III of the Americans with Disabilities Act of 1990; Section 501 of the Mental Health Systems Act; R.C. 340.011 and 340.03, and Ohio Adm.Code 5122:2-1-02. Appellant also sought relief as a third-party beneficiary to the contract between the board and Woodland Centers, and upon an alleged contract between appellant and Dr. Niehm and Woodland Centers.

Woodland Centers and Dr. Niehm filed a motion for summary judgment, which was ultimately granted by the trial court. Subsequently, the court filed a final judgment entry which dismissed the complaint against the board and Ronald Adkins and again entered judgment in favor of Dr. Niehm and Woodland Centers.

■ Appellant's sole assignment of error contends that appellees' motion for summary judgment should not have been granted because genuine issues of material fact existed. In reviewing a motion for summary judgment, the lower court and the appellate court utilize the same standard, *i.e.*, we review the judgment independently and without deference to the trial court's determination. *Midwest Specialties, Inc. v. Firestone Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884; cf., also, *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352, 353–354; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Additionally, a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which (1) that party bears the burden of production at trial, and (2) for which the moving party has met its initial burden. See *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 623 N.E.2d 591, and *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

■ Appellant argues that she presented a material issue of genuine fact concerning her claims under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. Section 504 of the Rehabilitation Act of 1973, Section 794, Title 29, U.S.Code, provides:

"No otherwise qualified individual with a disability * * * shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance * * *."

To establish a claim under the Rehabilitation Act, appellant must prove that she is a handicapped person as defined by the statute, she is otherwise qualified for participation in the program, she is being excluded from participation, denied benefits of, or subjected to discrimination solely because of her handicap, and the program receives federal funding. *Nathanson v. Med. College of Pennsylvania* (C.A.3, 1991), 926 F.2d 1368, 1380. Appellees concede that appellant is a handicapped person, that the program receives federal funding, and that appellant is otherwise qualified for participation in psychotherapy and medical/somatic services. Appellant still has the burden of proving she is otherwise qualified for participation in case management services and that her services were terminated solely because of her handicap.

■ The record indicates that Woodland Centers attempted to treat appellant for her mental disabilities for over nine years. Based upon the testimony provided in the depositions, appellant refused to cooperate with any proposed treatment plan, and she did not get along with the clinical staff. She herself admits to having used profanity towards the clinical staff of Woodland Centers. Woodland Centers asserts that appellant's services were terminated because they were unable to develop a therapeutic relationship with her and further treatment would become detrimental. The Mental Health Rights and Advocacy Bill of Rights, Section 9501, Title 42, U.S.Code, which is a set of guidelines offered for review to ensure that mental health patients receive the protection and services they require, states:

"(3)(B) Nothing in this section should—

"(i) obligate an individual mental health or health professional to administer treatment contrary to such professional's clinical judgment;

"(ii) prevent any program or facility from discharging any person for whom the provision of appropriate treatment, consistent with the clinical judgment of the mental health professional primarily responsible for such person's treatment, is or has become impossible as a result of such person's refusal to consent to such treatment[.]"

Thus, appellees should not be forced to treat appellant contrary to their professional clinical judgment, *i.e.*, that further treatment would be detrimental to appellant.

■ Furthermore, appellees contend that appellant is not qualified for case management services because she does not meet the necessary requirements. To be eligible for case management services, an individual must meet two of the three criteria pursuant to 508 certification: diagnosis, duration of illness and a functional test. Appellant fails to meet both the diagnosis axis and the functional test axis of 508 certification. Her diagnosis is not among those listed for eligibility and her level of functionality is too high. Thus, the evidence reveals that appellant is not "otherwise qualified" for participation in case management services.

Appellant has not produced any evidence of record which contradicts the evidence of appellees or which presents a genuine issue of material fact. Accordingly, summary judgment was appropriate on her claims under Section 504 of the Rehabilitation Act.

Appellant also argues that she provided sufficient evidence to withstand summary judgment on her Title II claim. Although appellant originally brought claims under both Title II and Title III of the Americans with Disabilities Act, on appeal she only raises her Title II claim. Section 12132, Title 42, U.S.Code, provides:

"[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

The requirements under Title II of the ADA are similar to those required by the Rehabilitation Act, except that Section 12132 applies only to public entities. Thus, we must determine whether Woodland Centers is a public entity as defined by the statute. Section 12131, Title 42, U.S.Code defines the term "public entity" to include any state or local government and any department, agency, special purpose district, or other instrumentality of a state or states or local government. Appellant argues that since the provision of community mental health services is a governmental function, Woodland Centers, as a contract agency of the board, is performing a governmental function in regard to the services and facilities funded by the board and, therefore, is a public entity. We disagree.

■ Unlike the cases cited by appellant, Woodland Centers is not created pursuant to statute, nor is it created by a state department or agency. Woodland Centers is a private, not-for-profit corporation, whose mission is to improve the quality of life for residents in the area by providing them with mental health services. Although most of its funding is through the Gallia–Jackson–Meigs County Board of Alcohol, Drug Addiction and Mental Health, it also receives funding from private patient fees and private insurance. Appellant did not offer,

nor do we find, any support for the proposition that a private corporation should be considered a public entity simply because it receives public funding. Because Woodland Centers is not a department, agency, special purpose district, or other instrumentality of a state or local government, we find that it is not a public entity for purposes of Section 12132. Thus, summary judgment was appropriate for appellant's claim under the American with Disabilities Act as a matter of law.

■ Appellant has alleged in her complaint that she was terminated solely because of her disability, but has not produced sufficient evidence to overcome her burden on summary judgment. See *Wing, supra.* In essence, our interpretation of the plain language of these federal statutes boils down to the view that both the Rehabilitation Act and the Americans with Disabilities Act are designed to prevent discrimination based solely upon a person's *status* of being handicapped. An individual may not be denied benefits solely because that person is handicapped. However, in our view, nothing prevents an entity from discontinuing program benefits or participation in services where the handicapped individual's *actions* result in the impossibility of creating or maintaining a doctor/client relationship. See by way of analogy *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281, 25 OBR 331, 333–334, 496 N.E.2d 478, 480–481, and *Harris v. Ohio Bur. of Emp. Serv.* (1990), 51 Ohio St.3d 37, 40, 553 N.E.2d 1350, 1352–1353.

■ Next, appellant argues that the trial court erred in granting summary judgment for appellees on her claims under R.C. 340.011 and 340.03 and the Ohio Adm.Code 5122:2–1–02. Appellees contend that appellant does not have a private right of action under these code sections, and thus summary judgment was appropriate. Neither the Ohio Revised Code nor the Ohio Administrative Code sections which appellant cites expressly provide for a civil remedy to a private party. Thus, we must determine whether to imply a private right of action in favor of appellant. A three-prong test is used to determine when a private right of action should be inferred: (1) Does the statute create a right in favor of appellant; (2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one; and (3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for appellant? *Strack v. Westfield Cos.* (1986), 33 Ohio App.3d 336, 337, 515 N.E.2d 1005, 1006–1007. See, also, *Cort v. Ash* (1975), 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26.[2]

---

**2.** The Supreme Court of the United States in *Cort v. Ash* (1975), 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26, set forth a four-prong test for determining when a private cause of action should be inferred. However, the fourth prong only applies to federal courts in diversity cases, deciding whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law. Thus, Ohio law holds the fourth prong to be inapplicable and

■ There is no indication in the record of any legislative intent to create a private remedy under R.C. 340.011 and 340.03. Furthermore, R.C. Chapter 340 does not contain any civil penalties for noncompliance. Ohio Adm.Code 5122:2–1–02 does establish specific rights of clients and procedures for responsive and impartial resolution of client grievances. These procedures allow the client to file grievances with the community mental health board, any contract agency, the Ohio Department of Mental Health, Ohio Legal Rights Service, and the United States Department of Health and Human Services. Thus, clients are provided with administrative remedies, rather than civil penalties. Accordingly, it would be inconsistent with the underlying purposes of the legislative scheme to imply such a remedy for appellant.

■ Last, appellant contends that summary judgment was not appropriate as to her three contract claims. In her complaint, appellant claimed a right to relief as an intended third-party beneficiary to the contract between the board and Woodland Centers. Initially, we must determine whether appellant is entitled to enforce the contract. A party must be an intended beneficiary, rather than an indirect or incidental beneficiary, in order to enforce the contract. *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 521 N.E.2d 780. While it is not necessary for a third-party beneficiary to be identified in the contract, the contract must be made and entered into with the intent to benefit the third party. *Akron v. Castle Aviation, Inc.,* (June 9, 1993), Summit App. No. 16057, unreported, 1993 WL 191966, citing *Chitlik v. Allstate Ins. Co.* (1973), 34 Ohio App.2d 193, 196, 63 O.O.2d 364, 366, 299 N.E.2d 295, 297. Generally, private citizens do not have the right to enforce government contracts on their own behalf, unless a different intention is clearly manifested. *Id.* The contract between the board and Woodland Centers is considered a government contract, entered into between a private corporation, *i.e.,* Woodland Centers, and a government entity, *i.e.,* the board. Appellant has not shown a clearly manifested intention on behalf of the contracting parties to give appellant a private right to enforce the contract. The contract was to provide mental health services to the community at large. While appellant may clearly benefit from this contract, she is merely an incidental beneficiary. Accordingly, appellant may not enforce the contract as a third-party beneficiary.

■ Appellant also claimed a right to relief under an alleged contract between herself and Woodland Centers, as well as equitable enforcement of that agreement. Courts generally determine the existence of a contract as a matter of law. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 567 N.E.2d 262.

---

only applies the first three prongs of the *Cort v.* Ash *test in determining whether a private right of action exists. See* Strack, *supra.*

Appellant argues that the correspondence between herself and Dr. Niehm is sufficient to produce a genuine issue of fact as to the existence of a contract between the parties for reinstatement of services. Appellant further alleges that Woodland Centers' denial of reinstatement was a breach of that contract.

We assume without deciding that the letters are sufficient evidence to establish the existence of a contract. However, we believe the court's judgment was correct regardless of whether a contract had been formed. It has long been held that impossibility of performance renders a contract unenforceable. See *Cleveland Indus. Square, Inc. v. Cleveland* (Mar. 9, 1995), Cuyahoga App. No. 67068, unreported, 1995 WL 106149; *Herman v. Natl. Hobby Co., Inc.* (Jan. 14, 1993), Cuyahoga App. No. 61586, unreported, 1993 WL 7938; *Anchor v. Jones* (Apr. 22, 1992), Lorain App. No. 91CA5109, unreported, 1992 WL 82652. It is clear that appellant's conduct has rendered performance of any contract between her and the appellees impossible.

Furthermore, appellant seeks specific performance of the contract rather than money damages. It is long-settled law that a court of equity will not decree specific performance of a contract for personal services. This rule is based upon the fact that the mischief likely to result from an enforced continuance of the relationship after it has become personally obnoxious to one of the parties is so great that the interests of society require the remedy be denied. See *Sokolowsky v. Antioch College* (June 11, 1975), Greene App. No. 863, unreported, and *Felch v. Findlay College* (1963), 119 Ohio App. 357, 27 O.O.2d 415, 200 N.E.2d 353. This is especially true in a professional context such as attorney/client or doctor/patient status where mutual trust is the essence of the relationship. Furthermore, such a contract will not be specifically enforced where there is an adequate remedy at law, *i.e.*, damages. *Sokolowsky, supra.* Not only do the pleadings fail to address money damages, appellant has not produced any summary judgment evidence to establish them.

Appellant's final claim is, in essence, a claim of promissory estoppel. In order to prevail on a claim of promissory estoppel, appellant must show a clear and unambiguous promise and reliance by the party to whom the promise is made. The reliance must be reasonable and foreseeable, and the party relying on the promise must have been injured by the reliance. *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284, 619 N.E.2d 1035, 1036–1037. The record does not show any evidence of reliance by appellant or that appellant has been injured by such reliance. The record contains correspondence between Dr. Niehm and appellant, but appellant's reliance on that correspondence and any injury due to that reliance has not been shown. Thus, the facts presented do not permit recovery under the doctrine of promissory estoppel.

Based upon our review of the record, appellant has not presented any genuine issues of material fact to withstand appellees' motion for summary judgment. Accordingly, appellant's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE, P.J., and STEPHENSON, J., concur.