[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Plaintiff-appellant, Bryce A. Blanton [Blanton], appeals the decision of the Court of Common Pleas of Marion County, Ohio, which granted dismissals to Defendants-appellees, City of Marion [City], Preparing Individuals for Careers, Inc. [PIC], and Marion City Board of Education [Board].
On July 2, 1993, Blanton was injured while working on a garbage collection truck. The incident occurred when the truck emptied a trash receptacle at one of Board's schools. As the truck was in the process of emptying the receptacle's contents, one side of the trash bin unhinged from the rear of the truck, causing the bin to swing around the edge of the truck and crush Blanton between the truck and the bin. This truck was owned by City. Blanton asserts that the receptacle unhinged because the bin was improperly loaded by Board's school employees and because the safety devices on the truck which prevent this type of incident had been removed by City's employees.
Blanton happened to be on the garbage truck pursuant to a job training program known as "Job Training Partnership Ohio," funded by the United States Department of Labor and administered at the local level by PIC. City voluntarily participated in this program. In this program, PIC hired individuals and City allowed these persons to work summer jobs within the city. In this case, Blanton was employed by PIC and was, initially, assigned to work in the city's Transit Department, performing janitorial duties at the Marion Area Transit garage. On the day at issue, Blanton had been reassigned to the city's Sanitation Department, with trash collection duties.
On February 9, 1995, Blanton filed a complaint sounding in contract, promissory estoppel, intentional tort and negligence in the Common Pleas Court of Franklin County, Ohio. The named defendants were City, PIC, an entity entitled Marion Area Transit [MAT], Ohio Bureau of Employments Services, and Galion Solid Waste Equipment, Inc. The following month, an amended complaint was filed, with additional claims asserted against Board, Leach Company, and Road Machinery Company. Blanton sought damages for his injuries received beyond those benefits permitted from the Bureau of Worker's Compensation. Answers were timely filed by all parties but for Board.
In April, 1995, a motion requesting a change of venue was made by City. This motion was granted in view of the fact that the sole defendant which resided in Franklin County was dismissed, four of the remaining seven defendants resided in Marion County and the incident complained of occurred in Marion County. Eventually, Galion Solid Waste, Leach Company and Road Machinery Company, the defendants which did not reside in Marion County, were also voluntarily dismissed from the action.
Because of Board's failure to respond to his complaint, Blanton filed a motion for default judgment. Board responded to this motion and provided an affidavit requesting the court accept the delay in filing an answer as excusable neglect, which the trial court did. Thereafter, a variety of summary judgment motions were filed by Blanton, City, PIC, MAT and Board. In attempting to resolve some of the issues before it, the court suasponte ordered supplements to the summary judgment motions be filed, so as to present evidentiary materials on the nature of the relationship between City and MAT.
On November 14, 1997, the trial court entered a determination that MAT was an agency of City. Thus, the court found that any of Blanton's claims against this entity were in actuality claims against City. Thus, MAT was not a party to this action. Later that day, the trial court issued a ruling which granted summary judgment to City. Thereafter, in a judgment entry, City was dismissed as a defendant in this action. Subsequently, two additional judgment entries were filed which granted judgment as a matter of law and final judgment of dismissal to PIC and Board. From the entries which dismissed his claims against City, PIC and Board, Blanton appeals.
In his appeal, Blanton asserts the following four assignments of error:
 I. The Trial Court erred dismissing Plaintiff-Appellant's contract based claims against the City of Marion/Marion Area Transit Authority (MAT) and Preparing Individuals for Careers (PIC).
 II. The Trial Court erred in dismissing Plaintiff-Appellant's tort claims against the City of Marion/Marion Area Transit Authority.
 III. The Trial Court erred in dismissing Plaintiff-Appellant's Intentional Tort Claim against PIC.
 IV. The Trial Court erred in overruling Plaintiff-Appellant's motion for default judgment against Marion Board of Education (MBE) and dismissing Plaintiff's claims against MBE.
Given the interrelatedness of the facts and Blanton's claims against City and PIC, the first, second and third assignments of error will be addressed simultaneously. The fourth assignment of error will be discussed thereafter.
The basis for the dismissal of Blanton's claims against the various parties was the trial court's decision which granted summary judgment to City. Blanton, in essence, argues that this action by the trial court was improper and we shall begin our review with this decision. Summary judgment will be granted when no genuine issues of material fact remain to be litigated and, after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The grant of summary judgment should be awarded with caution, with the trial court resolving doubts and construing evidence in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360. When a trial court's decision on a summary judgment motion is appealed, the reviewing court must apply the same consideration standard as that used by the trial court. LorainNatl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129.
In the first assignment of error, Blanton asserted a breach of contract cause of action against City and PIC.[1] As Blanton argued in his summary judgment motion, the essence of this claim is as follows:
 [T]here was an agreement between PIC and MAT whereby [Blanton] and other participants in the PIC program in the Spring of 1993 were to work on the MAT garage. * * * [Blanton] was the beneficiary of this agreement.
* * *
 [B]y virtue of the contract between PIC and MAT, the promisor MAT promised the promisee PIC that job training participants would work in the MAT garage. The purpose of this was to protect the PIC job training participants from dangerous situations. * * * Therefore, there is no question that the breach of the contract as to where [Blanton] would be working was a breach of duty to Plaintiff by both PIC and MAT, and both of these entities may be sued by [Blanton], an intended beneficiary, for damages flowing to him from the breach of the agreement.
That which Blanton considers a contract between City and PIC is a document entitled "SYETP [Summer Youth Employment and Training Program] Worksite Agreement." This manuscript established the administrative guidelines for the operation of this program and additional aspects, including:
 8. Each participant shall receive adequate supervision. * * *
* * *
 10. The participant will be paid by PIC, however, the participant is accountable to the worksite supervisor. * * *
* * *
 12. Worker's compensation shall be provided by PIC; however, the worksite's premises and operations liability insurance shall cover the participant's placement at the worksite and any and all activities in connection therewith.
* * *
 14. An evaluation of the participant's performance must be submitted to the worksite SYETP advisor. * * *
 15. A safe and healthy work environment shall be provided as specified by the Federal Legislation on youth employment.
* * *
22. The worksite further assures: * * *
 — that participant(s) perform(s) all duties contained in the attached job description (Attachment E).
* * *
 23. This agreement may be terminated for default or noncompliance whenever the worksite (shall default) in performance of the agreement in accordance with its terms and shall fail to remedy such default within a period of 10 days after receipt from the PIC, Inc. of notice specifying default or noncompliance. This agreement may be terminated because of changes in Federal Regulations or changes in federal funding that relate to subsidized funding.
At the end of the document were the dates and signatures of the PIC representative and City's worksite representative, Mr. William Hamby [Hamby]. Hamby was the administrator for City's Streets, Sanitation and Transit Departments.
In conjunction with the administrative guidelines document, Hamby also completed the required job description documentation for participation in the PIC program. He described the position for the PIC participant as "laborer" in the Marion Area Transit. This job's duties included:
1. washing windows at garage
2. mow and trim grass
3. wash and clean buses [sic]
 4. janitorial work at garage: sweeping, mopping floors, etc. basic maintenance of garage inside and out. Will be using step ladder for painting inside and out. Whatever work that needs to be done.
Hamby signed this document in his capacity as MAT Administrator.
In other words, Blanton maintains that, by the terms of these documents, a contractual obligation was formed to place youth in the MAT garage for summer employment and to provide a safe working environment. He continues with the argument that he was an intended third party beneficiary of this contract and that placement on a garbage truck violated the contract.
Upon a review of the record, we are not convinced that these documents constitute a formal contract between City and PIC for youth services. These papers appear to simply be administrative guidelines for the operation of the summer employment program. What Blanton is considering to be contractual terms, could also be interpreted as assurances of expectations for City and PIC, to ensure successful experiences with the job training program. If this is the case, then neither City nor PIC could enforce the terms of the document, let alone Blanton, who admits he is a third party to the arrangement.
However, even assuming that the composite of these documents did form a contract, we are skeptical that a breach of the contract occurred. Testimony from Hamby in his deposition was that even though there was paperwork he had to complete to participate in PIC's job training program:
 [The] 18 to 21 year olds * * * could basically [be] put anywhere you wanted to because they were 18 years of age.
* * *
 [Usually PIC doesn't want the 15 to 17 year olds] in certain circumstances like, uh, running lawnmowers or this type of thing. Any of the kids from 18 to 21 could basically do about anything you had to do.
It was also Hamby's understanding that the PIC program did not require the participants to work in the garage. As he stated:
 A: [The PIC Representative] called me 'cause [Blanton and two others] were 18 to 21, and she called me I think it was around the first of May or the end of April there and wanted to know if I could use these kids, uh, for the streets and sanitation department and I told her yeah, and they sent those kids to work for me right as soon as I told her that. Now, the other kids that I had during that year worked at the MAT garage.
 Q: So it's your testimony that [the PIC Representative] actually approached you about having somebody work in streets and sanitation?
 A: Yeah, the 18 to 21 year olds because they could actually work on the streets because of their age.
In the summer of 1993, Blanton was twenty-one. Further, there is no evidence that City considered a placement on the garbage truck an unsafe or unhealthy work environment. Hamby said:
 A: [W]hen a new employee was hired for the City, they went right on the garbage truck, yes. OJT, on-the-job training more or less is basically how it always worked.
In other words, it appears that City and PIC were performing their respective duties pursuant to the documents signed. PIC paid Blanton and City provided to Blanton the supervision and supportive environment as required. Blanton's transfer to the Streets and Sanitation Department also appears to be a consistent pattern of prior practice for PIC and City, with the required job description acting as an initial suggestion of placement subject to modification.
Finally, assuming arguendo that a contract did exist and that it had been breached, we cannot conclude that Blanton was an intended third party beneficiary as he asserts. A third party beneficiary is one for whose benefit a promise is made but who is not a party to the contract. Chitlik v. Allstate Ins. Co. (1973),34 Ohio App.2d 193, 196. An intended beneficiary is one who has enforceable rights under the contract, in contrast to an incidental beneficiary who has no rights of enforcement. Hill v.Sonitrol of Southwestern Ohio (1988), 36 Ohio St.3d 36, 40. The key distinction between an intended and incidental beneficiary is that for one to be an intended beneficiary, the contract must be entered into with the intent to benefit that person. Doe v.Adkins (1996), 110 Ohio App.3d 427, 436.
In this case, the arrangement between City and PIC was, as stated in PIC's explanatory materials, intended to, among other things:
 [P]repare youth for the working world and increase future chances for full-time employment * * *
* * *
 [Obtain] hands on experience at a worksite * * * [allowing] the student to receive assistance that will apply directly to the job.
This arrangement was to provide employment services to economically disadvantaged youth between the ages of fifteen and twenty-one. Apparently Blanton qualified for the program and he can be said to have directly benefitted from the service. However, this was also an arrangement between two governmental entities. City is clearly a governmental body and funding for this PIC program was obtained from the federal government. As a general rule, unless an intention is clearly manifested in the contract to the contrary, citizens do not have a right to enforce government contracts on their own behalf. Adkins, supra at 436;City of Akron v. Castle Aviation, Inc. (June 9, 1993), Summit Co. No. 16057, unreported. Here, no such intention is demonstrated which would allow a private citizen suit. Thus, Blanton is an incidental beneficiary and has no privileges of enforcement.
For the same reasons, Blanton's breach of contract claim against PIC also fails. However, the provisions of R.C. Chapter 4123, Workers' Compensation provide additional justification to bar recovery for this claim. Blanton made claims with the Industrial Commission of Ohio against PIC as his employer, and they have been reviewed. Accordingly, R.C. 4123.74 applies in this matter. This provisions states:
 Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition * * * whether or not * * * compensable under [R.C. Chapter 4123].
R.C. 4123.74. Although there are exceptions to this statutory provision, R.C. 4123.74 has been interpreted to include a bar on breach of contract claims. Monnin v. Larger Constr. Co. (1995),102 Ohio App.3d 228, 232. Thus, since evidence exists to support PIC's participation in the Workers' Compensation system, and PIC has, in fact, supported Blanton's claim to these benefits, the immunity conferred to participating employers by this statute applies.
Blanton further argues a claim of promissory estoppel against City and PIC. To prevail on this claim, Blanton must demonstrate that a clear and unambiguous promise was made to him by each of these parties and that he relied on that promise. Moreover, "[t]he reliance must be reasonable and foreseeable, and the party relying on the promise must have been injured by the reliance."Adkins, 110 Ohio App.3d at 437.
In this case, Blanton uses the theory of promissory estoppel to assert that he possessed a contract of employment with City and PIC. However, we conclude that promissory estoppel is inapplicable to these circumstances. PIC concedes that an employer-employee relationship existed between it and Blanton. By the very terms of this acknowledgement, promissory estoppel cannot apply. We also cannot say that City made job assurances to Blanton. All parties were aware that the arrangement was for the youth to be employed by PIC under City's supervision for summer employment experiences. Further, the parties acted consistently with roles outlined within the SYETP documents.
However, even if sufficient promises were made to justify application of promissory estoppel principles to Blanton and City's relationship, Blanton would have difficulty showing such reliance to have been reasonable and that his injuries were potentially the result of any reliance. As stated above, Hamby possessed latitude in his placements of older PIC participants, received a request from PIC for placements of older participants into the Streets and Sanitation Department, and did not know that an assignment to the Streets and Sanitation Department would be unsafe or unhealthy. Thus, we must agree with the trial court's conclusion that Blanton presented no genuine issues of material fact pertaining to the breach of contract or promissory estoppel cause of action. We find no error in the trial court's action of awarding summary judgment to City and PIC on this issue.
Blanton's second assignment of error questions the trial court's action of dismissing his negligence claim against City. The essence of this claim was that when City assigned Blanton to work on the garbage truck, it breached a duty owed to him. The garbage truck, according to Blanton, was a dangerous environment because the removal of the safety devises made the truck knowingly and unreasonably dangerous.
City's defense to this claim was an assertion of sovereign immunity pursuant to R.C. Chapter 2744, Political Subdivision Tort Liability.[2] R.C. 2744.02(A)(1) states the general rule of liability:
 For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental function and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable on damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
City is considered a political subdivision pursuant to R.C.2744.01(F), since it is "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state[.]" An exception to this rule of immunity is found in R.C. 2744.02(B)(2), which says:
 Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary function of the political subdivisions.
Thus, the issue becomes whether Blanton was engaged in City's undertaking of a governmental or proprietary function.
The record demonstrates that the Blanton's supervisor at the city possessed managerial responsibilities for the Streets, Sanitation and Transit Departments. R.C. 2744.01(C)(2)(k) defines the "collection and disposal of solid wastes" as a governmental function. Proprietary functions include "[t]he establishment, maintenance, and operation of a . . . busline or other transit company[.]" R.C. 2744.01(G)(2)(c). Blanton also asserts that City's voluntary involvement in a job placement program is also a proprietary function, finding the program comparable to the operation of an arts and crafts center pursuant to R.C.2744.01(G)(2)(e).
We conclude that City was engaged in a governmental function. At the time of the incident, Blanton's actual activity was that of collecting garbage, a governmental activity. Although this is different from the activities in which PIC was advised its placement person would be engaged, our prior discussion reveals that all parties were acting within their prescribed roles.
Blanton maintains that any meritorious claim of sovereign immunity by City is overcome through application of either the responsibilities outlined in R.C. 4101.11, Duty of Employer to Protect Employees and Frequenters, and 4101.12, Duty of Employer to Furnish Safe Place of Employment, or the special duty exception to the common law public duty rule. However, we are in agreement with the trial court's ten page discussion and resolution of these issues. We do not recognize the need to elaborate on these matters any further than to note that these theories do not abrogate City's immunity. Thus, for the foregoing reasons, we conclude that the trial court did not err in its decision regarding the merits of Blanton's negligence claim. Accordingly, we agree with the trial court's finding that no genuine issues of material fact exist regarding Blanton's claims against City and the trial court's grant of summary judgment was proper.
In Blanton's third assignment of error, he claims that the trial court erred in dismissing his intentional tort claim against PIC. The law applicable to this assertion is set forth in Fyffev. Jeno's, Inc. (1991), 59 Ohio St.3d 115, syllabus:[3]
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. [Citation omitted.]
To maintain his claim, Blanton must demonstrate proof of these elements "beyond that required to prove negligence and beyond that to prove recklessness. . . . [T]he mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id. at paragraph two of the syllabus.
In this case, Blanton failed to establish, as a matter of law, that PIC possessed the requisite knowledge to be accountable for an employer intentional tort. There is no dispute among the parties that PIC, and not City, is Blanton's employer. However, as PIC's executive director stated in an affidavit he included with his summary judgment motion:
 That PIC, Inc. did not have any direct control over the work site where Bryce Blanton was injured[;]
 That PIC, Inc. did not own or operate any of the allegedly defective equipment that was used by Bryce Blanton on July 2, 1993;
 That PIC, Inc. had no direct authority to alter or correct any of the conditions of the work place of Bryce Blanton, or the equipment that * * * was allegedly defective.
Likewise, without this knowledge, PIC cannot be said to have asked Blanton to continue to work under dangerous conditions. Moreover, as detailed earlier, City did not consider the position in which Blanton was placed to be unsafe or unhealthy.
Accordingly, PIC did not possess the requisite knowledge for maintenance of an intentional tort cause of action. We conclude that the trial court did not err in its finding as a matter of law for PIC since Blanton presented no genuine issues of material fact. Thus, the trial court properly awarded summary judgment to PIC on this issue. Based on the foregoing discussion, the trial court properly dismissed City and PIC for a lack of meritorious claims remaining and the first, second and third assignments or error are overruled.
Finally, Blanton claims in his fourth assignment of error that the trial court's denial of his default motion against Board and, ultimately, dismissal of his negligence claim against this defendant was error. Initially, we note that it is a matter of trial court discretion to permit the filing of a pleading after the expiration of the specified time when the delay is due to excusable neglect. Civ.R. 6(B)(2). A determination a excusable neglect requires consideration of all the facts and circumstances.Davis v. Immediate Med. Serv., Inc. (1997), 80 Ohio St.3d 10, 14. On review, a trial court's ruling of this matter will be upheld so long as an abuse of discretion is not present. Id.
Here, the trial court determined that Board demonstrated the requisite excusable neglect. Once made aware that no answer had been filed on its behalf, Board's Superintendent of Schools submitted an affidavit requesting an extension of time to file an answer. In this affidavit, the superintendent stated:
 1. [S]ervice of a Complaint in the action titled Blanton v. City of Marion Ohio, et al, * * * was received by the District [i.e. Board] on or about March 23, 1995.
 2. That subsequent to receiving this Complaint, contact was made with a Steve Chaffin, an Assistant Law Director for the City of Marion.
 3. That in a discussion with Mr. Chaffin, I was informed that the Marion City Schools would be protected and covered by the City of Marion in this particular action and that a defense would be made on our behalf by the City, a co-defendant to this action.
 4. That subsequent to same, time passed and I received various materials which I then passed on, on several occasions, and had discussions with City's counsel [or office manager] in regards to this pending action.
* * *
 6. That as a result of said excusable neglect or error of the Marion City School, no appearance or response was made because we were in a good faith belief that the City of Marion was entering a defense on our behalf.
City also recognized its error and requested the trial court to permit Board an enlargement of time to file an answer. Thus, upon a review of the facts and circumstances, we conclude that the trial court reasonably determined that Board's failure to file a timely answer was excusable neglect and that no abuse of discretion occurred when it permitted Board to file its answer. Accordingly, the default issue raised by Blanton is without merit.
Moreover, just as City is granted immunity from tort claims, Board is also immune from Blanton's negligence cause of action. Board is considered a political subdivision for the purposes of R.C. Chapter 2744, pursuant to R.C. 2744.01(F). According to R.C.2744.03(A)(5):
 (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by an act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 (5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, * * * unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
In this case, the trash receptacle is equipment and loading trash within it constitutes the use of that equipment. Blanton asserts that an improperly loaded receptacle caused the incident. Yet even if Blanton produced evidence supporting this premise, the intent requirements for liability to attach are not satisfied. The mere act of improperly loading a trash receptacle on a single occasion does not demonstrate that Board's judgment or discretion was "exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." Thus, Board is within the immunity provisions of R.C. Chapter 2744. In sum, since Blanton presented no genuine issues of material fact, the trial court did not err in its finding as a matter of law for Board. Thus, the trial court properly awarded summary judgment to Board and dismissed it as a defendant. Accordingly, the fourth assignment of error is overruled.
In conclusion, Blanton's four assignments of error are overruled and the judgment of the Court of Common Pleas of Marion County is affirmed.
Judgment affirmed.
 EVANS and BRYANT, JJ., concur.
[1] Because Blanton's arguments in his summary judgment motion were directed solely toward PIC and MAT, the trial court, in its ruling on summary judgment for City held "it appears that [the Counts of Breach of Agreement and Implied Contract] of the plaintiff's complaint do not apply to defendant, City of Marion[.]" However, this conclusion does not take into consideration the earlier released ruling which stated that "[a]ny and all claims of the plaintiff . . . against Marion Area Transit are merged into his claims against the defendant City of Marion." Thus, Blanton's claims survive and are considered to be against City.
[2] Portions of this Chapter were amended without significant changes as pertinent to this matter in 1996.
[3] The General Assembly attempted to overrule this Ohio Supreme Court decision with the passage in November of 1995 of R.C. Chapter 2745, Employer Intentional Tort. However, this statutory provision applies to matters which occurred after the passage date of the legislation. Because the circumstances in this case predate the passage of R.C. Chapter 2745, the statutory provision is inapplicable. Moreover, this Court determined R.C. 2745.01 to be unconstitutional in Johnson v. BPChemicals, Inc. (Nov. 18, 1997), Allen. App. No. 1-97-32, unreported, jurisdiction granted, 81 Ohio St.3d 1500.