[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 30, 2010
JOHN LEY
CLERK

No. 08-15819
_____

D.C. Docket No. 05-00307-CV-FTM-29-SPC

DARON EDISON,

                                        Plaintiff-Appellant,

versus

TOMMY DOUBERLY, Warden,
BRENDA WILLIAMS, AFA Programs,
MR. LOVELL, Corrections Officer,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 30, 2010)

Before BARKETT, PRYOR and HILL, Circuit Judges.

HILL, Circuit Judge:

Daron Edison, a prisoner in a Florida state prison, filed this action *pro se*, alleging violations of the American With Disabilities Act, 42 U.S.C. §§ 12101-12214 (the "ADA"). The district court granted summary judgment to defendants, and Edison appeals.

## I.

Daron Edison brought this action against Timothy Douberly, Brenda Williams, and Timothy Lovell, alleging violations of Title II of the ADA by defendants in their "official capacities" as employees of GEO Care Group, Inc., ("GEO"), a private prison management corporation operating a Florida state prison. Edison sought injunctive relief and damages as the result of defendants' alleged violations of Title II, which prohibits a "public entity" from discriminating against qualified individuals with disabilities because of their disabilities. 42 U.S.C. § 12132.

Only public entities are liable for violations of Title II of the ADA. 42 U.S.C. § 12131. *Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The district court granted summary judgment to defendants on the grounds that GEO is

not a public entity and, therefore, not liable under the statute.[1]  It is to this question we now turn.

## II.

Edison contends that GEO is a public entity under the ADA because Section 12131(1)(B) of the statute defines a public entity, in part, as an "instrumentality of a State."  Edison bolsters his contention by application of traditional canons of statutory interpretation to the term "instrumentality of a State."

We agree with this approach to interpreting the term instrumentality of a State.  In fact, we agree with the Court of Appeals for the Second Circuit that interpretation of the ADA's use of the term  "instrumentality of a State" is *entirely controlled* by the statutory language itself.  *Green v. New York*, 465 F.3d 65, 78-79 (2d Cir. 2006).

In *Green*, the plaintiff alleged that a private hospital was a public entity for purposes of the ADA because it carried out a public function pursuant to a contract with New York City to provide certain services.  *Id.* at 78.  The Second

---

[1]Although GEO is not named as a defendant, plaintiff states that he has sued defendants in their "official capacities" and that the lawsuit, therefore, is really a suit against the alleged "public entity," GEO.  Plaintiff's theory is that GEO is a public entity under the ADA, and, therefore, its employees have official capacities.  Because we hold that GEO is not a public entity, we need not and do not decide whether its employees would have had official capacities if it were.

Circuit, however, said that the plaintiff's theory "failed to grapple with the actual words of the statute." *Id.*

The court observed that, under the rules of statutory interpretation, the term "public entity" must be given its plain meaning, and, if those words are susceptible to more than one such meaning, their interpretation must be guided by the canons of statutory construction. *Id.*[2] Courts are not free, and may not elect, to adopt other interpretations of statutory language and expand the reach of a statute merely because some might find it desirable.

With these limitations in mind, the Second Circuit looked to the definitions section of Title II. That section defines "public entity" to mean "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. §12131 (1)(B). The court, reasoned, therefore, that the private hospital there could be a public entity *only* if it were an "instrumentality of a State," as it fit no other statutory category.[3] *Id.* The question, then, is what does the statute mean by the words "instrumentality of a

---

[2]We move beyond these methods of statutory interpretation, to legislative intent and policy considerations, only if both the plain meaning of the language and the canons of construction fail to resolve the ambiguity. *Id.*

[3]The hospital, like the private prison management company here, was not a state or local government, a department, agency, or special purpose district of a state or local government or the National Railroad Passenger corporation or a commuter authority.

4

State."  *Id.*

"Instrumentality," the Second Circuit observed, is a word susceptible of more than one meaning.  *Id.* at 79. Turning then to the canons of statutory construction, the court noted that under the canon *noscitur a sociis*, "a word is known by the company it keeps."  *Id.* (citing *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)) (although *noscitur a sociis* is not an inescapable rule, "it is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress").

The "company" which "instrumentality" keeps in this definition of public entity include the words "department, agency, and special purpose district."  The court noted that all of these words are qualified by the remaining words in the definition – "of a State or States or local government."  *Green*, 465 F.3d at 79.  Agencies and departments are units of a governmental entity.  A special purpose district (in New York, as well as in Florida) is set up to serve the special needs of a governmental entity, such as water conservation.  The defining characteristic of all of these entities is that they are either traditional governmental units or created by one.  Thus, the Second Circuit concluded, the words "instrumentality of a State" were intended to refer, as do all the other words around them, to a *governmental*

5

unit. *Id.*[4]

The private hospital in *Green* was not such a governmental unit, the court concluded. Nor was it created by a governmental entity. Instead, "it is a parallel private entity." *Id.* Even where such a private entity contracts with a government to perform a traditional and essential government function, it remains a private company, not a public entity. A private contractor does not, the court held, become liable under Title II merely by contracting with the State to provide governmental services, essential or otherwise. *Id.* The Second Circuit affirmed the district court's dismissal of the private hospital.

We too have long recognized that our authority to interpret statutory language is constrained by the plain meaning of the statutory language in the context of the entire statute, as assisted by the canons of statutory construction. *Nguyen v. United States*, 556 F.3d 1244, 1252-57 (11th Cir. 2009); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003). We have affirmed many times that we do not look at one word or term in isolation but rather look to the

_____

[4]The result would be the same, the Second Circuit noted, under the rule of statutory construction of *ejusdem generis*, which provides that when general words follow the enumeration of particular classes, the general words should be construed as applying only to things of the same general class as those enumerated. *Id.* at 79 n. 10. Edison agrees with the application of *ejusdem generis*, but argues that it would permit interpretation of the statutory language to include entities that are the *functional equivalent* of governmental entities, and would not require entities to be of the *same* general class. This interpretation violates the canon of construction.

entire statute and its context. *See United States v. Silva*, 443 F. 3d 795, 798 (11th Cir. 2006). Our job in this case, then, is to interpret the ADA's use of the words "instrumentality of a State" in a manner consistent with their plain meaning and context, and in this endeavor we are persuaded that the Second Circuit has "got it right." We, too, hold that the term "instrumentality of a State" refers to governmental units or units created by them.

All of the courts that have considered this question have come to the same conclusion. In *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008), the district court held that a private medical provider for a prison could not be considered a "public entity" under the statute because it was not a governmental entity. The court adopted the holding of *Green* that a private contractor does not become a public entity under Title II merely by contracting with a governmental entity to provide governmental services. *Id.*

In *Hahn v. Linn County*, 191 F. Supp.2d 1051, 1055 n.2 (N.D. Iowa 2002), the district court held that the plain meaning of the language of Title II limits its liability to a public entity and that a contractual relationship between a private corporation and a county government does not transform the private corporation into a "public entity."

Similarly, in *O'Connor v. Metro Ride, Inc.*, 87 F. Supp. 2d 894, 900 (D.

7

Minn. 2000), the district court held that a private corporation was not a public entity merely because it contracted with the public entity to provide a specialized transit program for disabled persons.

Finally, in *Doe v. Adkins*, 674 N.E.2d 731 (Ohio Ct. App. 1996), the court held that a private mental health services corporation that provided contract services to a local mental health agency was not an instrumentality of that governmental unit for the purposes of the ADA. The court opined that "because [the defendant] is not a department, agency, or special purpose district, or other instrumentality of a state or local government we find that it is not a public entity for purposes of Section 12132 [of the ADA]."

## III.

We agree with these courts that a private corporation is not a public entity merely because it contracts with a public entity to provide some service. Since GEO is such a private corporation, we hold that GEO is not a public entity subjecting it to liability under Title II of the ADA and is, therefore, not a proper defendant in this action. Accordingly, the judgment of the district court is

AFFIRMED.[5]

---

[5] The dissent suggests that the appellant should have an opportunity to amend the complaint. However, he has not requested permission to amend – here, or in the district court.

BARKETT, Circuit Judge, dissenting:

The majority's analysis is flawed because it conflates government contracting with government function. In doing so, the majority fails to recognize the extremely significant distinction between a private company that can lawfully perform a function without state involvement and one that cannot. It is simply not possible for any entity to lawfully operate a prison without authorization from and a contract with the state. Unlike hospitals, which can be operated on behalf of the government through a contractual agreement or can be operated independently, prisons can never be operated independently of the government. That vital difference leads me to dissent.

The Supreme Court has made clear that the operation of a prison is a "primary function[] of government" – so much so that "[i]t is difficult to imagine an activity in which a State has a stronger interest." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998) (quotation and citation omitted). "One of the primary functions of government . . . is the preservation of societal order through enforcement of the criminal law, and the maintenance of penal institutions is an essential part of that task." Id. (quotation marks and citation omitted) (emphasis added). The government is the only entity with the power and authority to imprison individuals; thus, the operation of a prison is purely a government

9

function. Absent authorization from <u>and</u> a contract with a government, GEO could not — nor could any other private entity — establish and operate a prison.[1] It is thus clear that GEO is fulfilling a primary government function by operating Moore Haven and is therefore an "instrumentality of a State" for purposes of Title II of the ADA.

In the case upon which the majority relies, *Green v. City of New York*, the non-governmental entity involved (a hospital) was lawfully able to provide the very same services to others in a commercial setting without contracting with the state. 465 F.3d 65 (2d Cir. 2006). The court found that merely contracting with the state did not transform a private entity into a government unit, and therefore held that the hospital was not an "instrumentality of a State" under Title II. <u>Id.</u> at 78-79. While state involvement was not necessary to perform the function at issue in *Green*, that cannot be said of operating a prison. Similarly, the district court opinions cited by the majority involved companies that (1) operated a group home for disabled individuals, *Hahn v. Linn County*, 191 F. Supp. 2d 1051 (N.D. Iowa 2002); (2) provided transportation, *O'Connor v. Metro Ride, Inc.*, 87 F. Supp. 2d 894 (D. Minn. 2000); (3) provided medical services, *Cox v. Jackson*, 579 F. Supp.

---

[1] The idea of privately incarcerating individuals – the incarceration of individuals without state involvement – is so offensive to our American values that the U.S. Constitution forbids it. <u>See</u> U.S. Const. amend. XIII.

10

2d 831 (E.D. Mich. 2008), and (4) operated a mental health facility, *Doe v. Atkins*, 674 N.E. 2d 731 (Ohio Ct. App. 1996). Not one of these cases involved the performance of an exclusive governmental function that could be performed by a private entity <u>only</u> with the state's authorization to act in its place. GEO's operation of a prison is an exclusive governmental function, making it an "instrumentality of a State" subject to the requirements of Title II of the ADA.[2]

To the extent that the majority holds that contracting with the government to provide services does not, by itself, make a private company subject to Title II of the ADA, I agree. However, when a company <u>takes the place of the state</u> in performing a function within the exclusive province of the state, that company cannot be permitted to avoid the requirements of the law governing that state function.

Moreover, because the majority holds that GEO is not a proper defendant, this case should be remanded to the district court with instructions that Edison,

---

[2] The tools of statutory construction support a <u>functional</u> definition of "instrumentality of a State," as opposed to the one adopted by the majority. In rejecting an interpretation of "instrumentality of a State" that includes private prisons, the majority fails to adhere to the "ultimate goal" of statutory construction, which "is to give effect to congressional intent." *Renteria-Marin v. Ag-Mart Produce, Inc.*, 537 F.3d 1321, 1324-25 (11th Cir. 2008) (citation omitted). "The ADA was enacted to provide a national mandate for the elimination of discrimination against individuals with disabilities . . . and must be broadly construed." *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir.1996) (quotation marks and citation omitted). The majority does just the opposite when it adopts a narrow construction of the statute.

who litigated his case *pro se* in the district court, be allowed to amend his complaint. Under the district court's and the majority's view, Edison should have sued the Florida Department of Corrections.[3] However, it is certainly excusable for Edison to have believed that GEO, which fully operates the prison where Edison alleges discrimination, was a proper party.

Edison attempted to obtain counsel by filing a motion for appointed counsel both before the district court and before this circuit. The district court denied Edison's motion for appointment of counsel after concluding, mistakenly, that this case raised no novel or complex issue of law. The district court also found that Edison had demonstrated his ability to litigate *pro se*.[4]

The district court erred in construing Edison's ability to file a *pro se* complaint as evidence that he did not need assistance from appointed counsel.[5] His ability to file a case with writing assistance is not evidence that Edison could develop legal theories on his own or otherwise effectively research nuanced

---

[3] Edison's counsel informed the court that the statute of limitations on Edison's ADA claim has run. As such, the result of the majority's decision today is that Edison cannot initiate a new suit against the Florida Department of Corrections.

[4] This court granted Edison's renewed motion for appointment of counsel and, during oral argument, Edison's counsel confirmed that she would continue representing Edison at the district court.

[5] Edison was able to file his case pro se because he received writing assistance from law clerks at the prison library who assist illiterate and disabled prisoners by writing for and reading to them.

12

claims.[6]

Furthermore, contrary to the district court's conclusions, Edison raises an issue of first impression in this circuit and as such raises a novel legal issue in an area where there is sparse caselaw. In light of the fact that Edison is legally blind, his case raises novel issues of law, and he did not benefit from the assistance of counsel during the district court proceedings, the case should be remanded with the opportunity for Edison to amend his complaint.[7] Leaving the majority's holding on the ADA aside, it is an injustice to leave a blind, incarcerated litigant without any legal recourse in this complex litigation because his request for counsel was wrongfully denied during the district court proceedings.

For the foregoing reasons, I dissent.

---

[6] In fact, Edison had to re-file his suit because he initially, and mistakenly, filed his lawsuit under § 1983, and not the ADA.

[7] *See e.g.*, *Miller v. King*, 449 F.3d 1149, 1151 (11th Cir. 2006) (remanding case with leave to amend, in part, because litigant did not benefit from assistance of counsel at the time of filing his complaint); *Wilger v. Dep't of Pensions & Sec. for State of Ala.*, 593 F.2d 12, 13 (5th Cir. 1979) (affirming dismissal of suit but remanding for plaintiff to add additional defendants); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (same).