*1311 BARKETT, Circuit Judge,
dissenting:
The majority’s analysis is flawed because it conflates government contracting with government function. In doing so, the majority fails to recognize the extremely significant distinction between a private company that can lawfully perform a function without state involvement and one that cannot. It is simply not possible for any entity to lawfully operate a prison without authorization from and a contract with the state. Unlike hospitals, which can be operated on behalf of the government through a contractual agreement or can be operated independently, prisons can never be operated independently of the government. That vital difference leads me to dissent.
The Supreme Court has made clear that the operation of a prison is a “primary function[] of government” — so much so that “[i]t is difficult to imagine an activity in which a State has a stronger interest.” Pa. Dep’t of Corr. v. Yeskey, 524 U.S. 206, 209, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (quotation and citation omitted). “One of the primary functions of government ... is the preservation of societal order through enforcement of the criminal law, and the maintenance of penal institutions is an essential part of that task.” Id. (quotation marks and citation omitted) (emphasis added). The government is the only entity with the power and authority to imprison individuals; thus, the operation of a prison is purely a government function. Absent authorization from and a contract with a government, GEO could not — nor could any other private entity — establish and operate a prison.[1] It is thus clear that GEO is fulfilling a primary government function by operating Moore Haven and is therefore an “instrumentality of a State” for purposes of Title II of the ADA.
In the case upon which the majority relies, Green v. City of New York, the non-governmental entity involved (a hospital) was lawfully able to provide the very same services to others in a commercial setting without contracting with the state. 465 F.3d 65 (2d Cir.2006). The court found that merely contracting with the state did not transform a private entity into a government unit, and therefore held that the hospital was not an “instrumentality of a State” under Title II. Id. at 78-79. While state involvement was not necessary to perform the function at issue in Green, that cannot be said of operating a prison. Similarly, the district court opinions cited by the majority involved companies that (1) operated a group home for disabled individuals, Hahn v. Linn County, 191 F.Supp.2d 1051 (N.D.Iowa 2002); (2) provided transportation, O’Connor v. Metro Ride, Inc., 87 F.Supp.2d 894 (D.Minn.2000); (3) provided medical services, Cox v. Jackson, 579 F.Supp.2d 831 (E.D.Mich.2008), and (4) operated a mental health facility, Doe v. Atkins, 110 Ohio App.3d 427, 674 N.E.2d 731 (1996). Not one of these cases involved the performance of an exclusive governmental function that could be performed by a private entity only with the state’s authorization to act in its place. GEO’s operation of a prison is an exclusive governmental function, making it an “instrumentality of a State” subject to the requirements of Title II of the ADA.[2]
*1312 To the extent that the majority holds that contracting with the government to provide services does not, by itself, make a private company subject to Title II of the ADA, I agree. However, when a company takes the place of the state in performing a function within the exclusive province of the state, that company cannot be permitted to avoid the requirements of the law governing that state function.
Moreover, because the majority holds that GEO is not a proper defendant, this case should be remanded to the district court with instructions that Edison, who litigated his case pro se in the district court, be allowed to amend his complaint. Under the district court’s and the majority’s view, Edison should have sued the Florida Department of Corrections.[3] However, it is certainly excusable for Edison to have believed that GEO, which fully operates the prison where Edison alleges discrimination, was a proper party.
Edison attempted to obtain counsel by filing a motion for appointed counsel both before the district court and before this circuit. The district court denied Edison’s motion for appointment of counsel after concluding, mistakenly, that this case raised no novel or complex issue of law. The district court also found that Edison had demonstrated his ability to litigate pro sef
The district court erred in construing Edison’s ability to file a pro se complaint as evidence that he did not need assistance from appointed counsel.[4]
[5] His ability to file a case with writing assistance is not evidence that Edison could develop legal theories on his own or otherwise effectively research nuanced claims.[6]
Furthermore, contrary to the district court’s conclusions, Edison raises an issue of first impression in this circuit and as such raises a novel legal issue in an area where there is sparse caselaw. In light of the fact that Edison is legally blind, his case raises novel issues of law, and he did not benefit from the assistance of counsel during the district court proceedings, the case should be remanded with the opportunity for Edison to amend his complaint.[7] Leaving the majority’s holding on the ADA aside, it is an injustice to *1313 leave a blind, incarcerated litigant without any legal recourse in this complex litigation because his request for counsel was wrongfully denied during the district court proceedings.
For the foregoing reasons, I dissent.

. The idea of privately incarcerating individuals — the incarceration of individuals without state involvement — is so offensive to our American values that the U.S. Constitution forbids it. See U.S. Const. amend. XIII.

. The tools of statutory construction support a functional definition of "instrumentality of a State,” as opposed to the one adopted by the majority. In rejecting an interpretation of "instrumentality of a State” that includes private prisons, the majority fails to adhere to the “ultimate goal” of statutory construction, which “is to give effect to congressional intent.” Renteria-Marin v. Ag-Mart Produce, *1312 Inc., 537 F.3d 1321, 1324-25 (11th Cir.2008) (citation omitted). "The ADA was enacted to provide a national mandate for the elimination of discrimination against individuals with disabilities ... and must be broadly construed.” Kornblau v. Dade County, 86 F.3d 193, 194 (11th Cir.1996) (quotation marks and citation omitted). The majority does just the opposite when it adopts a narrow construction of the statute.

. Edison’s counsel informed the court that the statute of limitations on Edison’s ADA claim has run. As such, the result of the majority’s decision today is that Edison cannot initiate a new suit against the Florida Department of Corrections.

. This court granted Edison’s renewed motion for appointment of counsel and, during oral argument, Edison's counsel confirmed that she would continue representing Edison at the district court.

. Edison was able to file his case pro se because he received writing assistance from law clerks at the prison library who assist illiterate and disabled prisoners by writing for and reading to them.

. In fact, Edison had to re-file his suit because he initially, and mistakenly, filed his lawsuit under § 1983, and not the ADA.

. See e.g., Miller v. King, 449 F.3d 1149, 1151 (11th Cir.2006) (remanding case with leave to amend, in part, because litigant did not benefit from assistance of counsel at the time of filing his complaint); Wilger v. Dep't of Pensions & Sec. for State of Ala., 593 F.2d 12, 13 (5th Cir.1979) (affirming dismissal of suit but remanding for plaintiff to add additional defendants); Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir.1987) (same).